IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                           Case No. 24-13609

Smokecraft Clarendon, LLC                       Chapter 11

    Debtor.
_____/

**NOTICE**

THE MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND/OR FOR AN EXPEDITED HEARING. IF THAT MOTION TO SHORTEN OR EXPEDITE IS GRANTED, THE TIME TO OBJECT AND/OR DATE FOR HEARING WILL BE CHANGED AS PROVIDED IN SUCH ORDER.

**FIRST DAY MOTION TO PAY
PRE-PETITION WAGES OF NON-INSIDER EMPLOYEES**

Comes now Smokecraft Clarendon, LLC d/b/a Smokecraft Modern Barbecue. ("Smokecraft" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to pay certain pre-petition employee wages, and in support thereof state as follows:

    **I.**    **Introduction**

Boasting of phenomenal brisket, mouth-watering pulled pork, and, yes, smoked crab cakes, Smokecraft is one of the preeminent barbecue restaurants in the Washington, DC region. With a full bar, a lively atmosphere, and even an array of salads for those seeking a lighter meal, the Debtor's establishment is a mecca for those craving competition-quality barbecue and a beloved gathering spot for those simply looking for a good time. This is not a chain restaurant nonchalantly rewarming pre-cooked ribs while keeping the Barry Manilow music at a soft decibel; Smokecraft

1

is a boisterously inviting haven for those looking to experience a cuisine that is part and parcel of the American fabric.

Yet, for Smokecraft to go on, and for the Debtor to have a genuine chance at reorganization, the doors will need to stay open through the Chapter 11 process. And, of particular import to this motion, that means a talented group of employees – ranging from cooks, to waitstaff, to busboys – will need to stay on the job. Their loyalty is abiding but, in the outskirts of a city that is so often denoted as being the heart of capitalism, there is every reason to believe loyalty may falter in the face of unpaid wages.

Thusly, the Debtor seeks to pay the pre-petition wages of non-insider employees, in accord with Smokecraft's ordinary payroll procedures (including the withholding of wages to be remitted to taxing authorities and the payment, over and above said wages, of employer taxes occasioned by the running of payroll). Smokecraft acknowledges that one of its employees – the company's manager, who is a derivative equity holder – is assuredly bound to the business by ties that will defy a partial paycheck, and the Debtor accordingly does not seek leave to pay this insider for his pre-petition wages. But the other employees – whose ordinary payroll obligations are all well below the individual Section 507 threshold – are vital to Smokecraft's ongoing operations and should be compensated as such, so as to preempt very real concerns of staff attrition and the decay of workplace morale.

**II.     Standard**

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.     Argument: It is Necessary to Pay Employee Wages

The goal of this case – consistent with the outward objectives of Chapter 11 of Title 11 of the United States Code – is to reorganize the Debtor while Smokecraft continues to operate as a going concern. A failure to timely pay wages would work demonstrable frustration upon this goal by (i) inflicting undue economic burden upon the entity's workforce; (ii) compromising employee morale in a business that is intensively customer-facing; (iii) risking staff attrition; and (iv) inviting derogatory gossip, and the fomenting of rumors, in the community. Paying these obligations in a timely manner, however, would work only the slightest burden upon the Debtor while equally reinforcing to employees that a Chapter 11 filing is not synonymous with liquidation or demise.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

3

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

The United States Bankruptcy Court for the District of Colorado has more specifically touched upon the justification for paying the pre-petition wages of employees at the outset of a bankruptcy case:

> The Debtor presented evidence that the failure to pay employees "would seriously undermine the morale and loyalty" of its employees and would jeopardize reorganization efforts. This stands to reason. If employees are not paid, "they will leave." And even if employees remain with the Debtor notwithstanding the non-payment of prepetition wages and benefits, "it is probable that their work would be affected by their loss of income." The Court finds that the failure to pay the Debtor's employees their prepetition wages and benefits likely would jeopardize the Debtor's reorganization process.

*In re Escalera Res. Co.*, 2015 WL 7351396, *4 (Bankr. D. Colo. 2015) (quoting *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004); *In re Tusa–Expo Holdings, Inc.*, 2008 WL 4857954, *3 (Bankr. N.D. Tex. 2008)).

Simplifying matters in this case, each of the employee wages proposed to be paid is well below the statutory cap set forth in Section 507(a)(4) of Title 11 of the United States Code and, as such, would give rise to a priority claim if not timely paid. That provision expressly prioritizes claims for "wages, salaries, or commissions … earned by an individual," to the extent that such (i) not exceed $15,150.00 and (ii) the claim accrued "within 180 days before the date of the filing of the petition…" 11 U.S.C. § 507(a)(4).

The Debtor pays wages on a biweekly basis. Wages have accordingly been earned but not paid from April 22, 2024 through April 29, 2024 (the petition date herein), representing one half of the current pay period. The gross wages of each employee, for the past two pay periods, were as follows:

4

|  | April 21, 2024 | April 7, 2024 |
|---|---:|---:|
| Employee 1 | $882.72 | $991.20 |
| Employee 2 | $51.24 | n/a |
| Employee 3 | $368.10 | $360.64 |
| Employee 4 | $1,509.81 | $834.89 |
| Employee 5 | $1,496.27 | $1,037.98 |
| Employee 6[1] | $4,230.77 | $4,230.77 |
| Employee 7 | $187.08 | n/a |
| Employee 8 | $741.20 | $713.81 |
| Employee 9 | $2,788.46 | $2,788.46 |
| Employee 10 | $1,491.03 | $1,501.56 |
| Employee 11 | $654.15 | $634.50 |
| Employee 12 | $904.82 | $1,245.11 |
| Employee 13 | $1,723.02 | $681.56 |
| Employee 14 | $1,554.60 | $1,366.20 |
| Employee 15 | $703.62 | $799.56 |
| Employee 16 | $1,289.40 | $1,552.53 |
| Employee 17 | $941.25 | $851.10 |
| Employee 18 | $1,116.25 | $1,159.93 |
| Employee 19 | $1,169.60 | $1,184.60 |
| Employee 20 | $136.80 | $272.84 |
| Employee 21 | $945.63 | $1,090.22 |
| Employee 22 | $1,802.36 | $1,406.60 |
| Employee 23 | $1,381.17 | $963.51 |
| Employee 24 | $1,048.73 | $1,072.87 |
| Employee 25 | $938.91 | $879.21 |
| Employee 26 | $1,363.93 | $1,762.65 |
| Employee 27 | n/a | $269.20 |
| Employee 28 | n/a | $832.55 |
| Employee 29 | n/a | $218.40 |
|  |  |  |
| Total | $31,420.92 | $30,702.45 |
| Average | $1,208.50 | $1,137.13 |

---

[1] Employee 6 is an insider and leave is *not* sought to pay the pre-petition wages of Employee 6.

Pay is hourly for most but salaried for some; the foregoing numbers do include tax withholdings, marking gross obligations and not the sums of net paychecks. The Debtor uses a third party payroll administration system that, in turn, computes various tax obligations and debits Smokecraft's bank account for both wage and tax obligations. So the foregoing figures represent the total obligation of the Debtor – excepting employer-side taxes – incidental to wages, and a good faith estimation of the cumulative pre-petition burden occasioned by the forthcoming payroll is thusly in the neighborhood of $15,000.00 (with the pre-petition period being one half of the forthcoming payroll).

The restaurant's manager understands that there is not a sufficiently compelling reason to pay the pre-petition of his wages. And there is thusly a cumulative obligation, for pre-petition wages, of a markedly paltry nature. While $15,000.00 is, no doubt, a notable sum of money, it is also one that ultimately pales in comparison to the revenues of the Debtor (which well exceed $2 million each year) and the economic metrics of this case (which include alleged obligations of more than $1 million).

The Debtor does not operate a large, multi-national business and Smokecraft's employees are not compensated pursuant to agreements with stock options, golden parachutes, and annual bonuses that mirror the price of a vacation home. These are, rather, hardworking people who make an honest and market-appropriate wage. Failing to timely pay those wages would not only risk financial harm to loyal workforces but, too, would prove potentially incendiary to the Debtor's efforts to reorganize for the benefit of all creditors.

### IV. Conclusion

WHEREFORE, Smokecraft respectfully prays this Honorable Court (i) permit the Debtor to pay pre-petition wages to non-insider employees, in a sum not exceeding $15,000.00 in the aggregate; and (ii) afford such other and further relief as may be just and proper.

    Respectfully submitted,

    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    Bar No. 18071
    THE BELMONT FIRM
    1050 Connecticut Avenue NW,
    Suite 500
    Washington, DC 20036
    Phone: (301) 444-4600
    E-mail: mac@dcbankruptcy.com
    *Proposed Counsel for the Debtor*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April 2024, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on this 29th day of April 2024, a copy of the foregoing is being sent via e-mail to Bryan Pelino, Esq., the attorney who represented Capital Bank, N.A. in connection with that entity's loan to the Debtor.

    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.