IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                            Case No. 24-13609

Smokecraft Clarendon, LLC                        Chapter 11

     Debtor.
_____/

**NOTICE**

THE MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND/OR FOR AN EXPEDITED HEARING. IF THAT MOTION TO SHORTEN OR EXPEDITE IS GRANTED, THE TIME TO OBJECT AND/OR DATE FOR HEARING WILL BE CHANGED AS PROVIDED IN SUCH ORDER.

**FIRST DAY MOTION FOR LEAVE TO MAINTAIN AND
ADMINISTER GIFT CARDS ON AN INTERIM AND FINAL BASIS**

Comes now Smokecraft Clarendon, LLC d/b/a Smokecraft Modern Barbecue. ("Smokecraft" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code, and moves this Honorable Court for leave to maintain and administer an existing gift card program, and in support thereof states as follows:

**I.    Introduction**

The Debtor operates a barbecue restaurant and, consistent with prevailing norms in the dining business, also sells gift cards to members of the public (the "Gift Cards"), with variably-incremented vouchers being redeemable at Smokecraft's locale. While this is not an integral part of the Debtor's business, the operation of the Gift Card program is in line with common trade practices, allowing the entity to realize income in advance of correlative expenditures while also incentivizing members of the public to visit the subject location. More importantly, though, the dishonor of existing Gift Cards would invite palpable risk of immense reputational damage. For

1

these reasons, and as extrapolated upon *infra*, the Debtor respectfully asks that it be permitted to maintain and administer the extant Gift Card program, including through the honor of Gift Cards sold pre-petition.

**II.     Standard**

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

**III.    Argument: It is Necessary to Honor Gift Cards**

While the filing of a bankruptcy petitions is, no doubt, a matter of public record, the Debtor's continued operations in Chapter 11 will likely serve the time-tested goals of reassuring members of the public that business is carrying on as usual. Just hours after seeking relief under Section 301 of the Bankruptcy Code, each Debtor will open for business, and no aspect of this case will prevent the entity from serving high quality food and beverages, in an inviting atmosphere, to customers writ large. This notion of carrying on with business as usual is not a façade and, to the contrary, is an instrumental element of the reorganizational process, highlighting why debtors are permitted to remain in possession of their own affairs. Yet, should a customer produce a Gift Card for redemption, only to learn such is being dishonored on account of a bankruptcy filing, the interrelated reputational and economic harms to the Debtor will prove truly extraordinary.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds – or, as suggested here, expend in-kind resources – outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

More specifically addressing the issue of the post-petition treatment of pre-petition gift cards, the United States Bankruptcy Court for the Eastern District of North Carolina has explained both the rationale and legal justification for orders such as that instantly sought:

> It is not uncommon for a chapter 11 retail debtor to seek authority from a bankruptcy court to honor gift cards issued pre-petition as a means to foster goodwill with its customer base and to ensure customers' continued patronage during and following reorganization. Courts routinely grant such motions and recognize the benefits inherent in affording such relief. In addition to maintaining goodwill and preventing damage to a debtor's reputation, courts grant chapter 11 debtors broad discretion as to whether to honor gift cards and to what extent based upon the debtor's business judgment. Such orders are commonly issued pursuant to 11 U.S.C. § 105(a).

*In re Skin Sense, Inc*, 2017 WL 474317, *3 (Bankr. E.D.N.C. 2017) (citing *In re The Wet Seal Inc., et al.*, Case No. 15–10081–CSS, Dkt. 95 (Bankr. D. Del. 2015); *In re Hancock Fabrics, et al.*, Case No. 16–10296–BLS, Dkt. 49 (Bankr. D. Del. Feb. 3, 2016)).

Here, the Debtor has $19,045.89 in outstanding, unredeemed Gift Cards. Based on operating history, Smokecraft knows Gift Card redemptions to be a *de minimis* portion of sales, with many cards being perpetually unredeemed. So while the Debtor instantly seeks leave to honor

3

certain pre-petition obligations on a demand basis, Smokecraft has no reason to believe such demand will materially impact profitability while in Chapter 11.

The alternative to honoring pre-petition Gift Cards, however, is quite dark. The parade of horribles that would ensue from refusing acceptance of Gift Cards is neither hyperbolic nor prone to overstatement. The Debtor operates in an insular marketplace where derogatory information is capable of spreading with haste; the Debtor equally operates in a universe of social media and online reviews where derogatory comments echo with equal speed. Failing to honor a Gift Card is not only a surefire means of jeopardizing a customer's future patronage; it is, too, an equally surefire means of jeopardizing the business of a wide swath of individuals in that customer's personal and cyber orbits. Honoring a Gift Card, meanwhile, is a supremely minor burden, and can even prove a profitable one if a given customer runs a tab in excess of the Gift Card's balance.

The Debtor equally seeks leave to continue Gift Card sales to the public. This is a mechanism used to not only raise money but, too, to draw patrons into Smokecraft's restaurant on multiple occasions. Smokecraft receives the benefit of revenues received (less fees paid to a third party) and acknowledges the correlative liability – down to the penny – on its books. Realizing such revenues will assuredly only help an entity through the bankruptcy process.

Indeed, the upside to continuing to sell Gift Cards is simply that such is a mechanism of giving existing customers – together with whoever they may bestow such a Gift Card upon – reason to visit the Debtor's restaurant, while simultaneously putting funds in the Debtor's bank accounts. "I'd gladly pay you Tuesday for a hamburger today" has been the enduring motto of J. Wellington Wimpy for the better part of a century; all the Debtor proposes instantly is that Smokecraft be permitted to be paid today for a hamburger Tuesday.

4

**IV.  Conclusion**

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) permit the Debtor to honor all pre-petition Gift Cards; (ii) permit the Debtor to continue operating the Gift Card program; (iii) enter an order permitting such relief on an interim basis, with said order being immediately effective, per the allowance of Federal Rule of Bankruptcy Procedure 6004(h); (iv) direct the interim order become final after the expiration of 21 days if no party in interest timely objects to the same; and (v) afford such other and further relief.

    Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April 2024, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on this 29th day of April 2024, a copy of the foregoing is being sent via e-mail to Bryan Pelino, Esq., the attorney who represented Capital Bank, N.A. in connection with that entity's loan to the Debtor.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.