IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                                                 Case No. 24-13609-MCR

Smokecraft Clarendon, LLC                                             Chapter 11

     Debtor.
_____/

**REPORT PURSUANT TO 11 U.S.C. § 1188**

Comes now Smokecraft Clarendon, LLC d/b/a Smokecraft Modern Barbecue. ("Smokecraft" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Section 1188(c) of Title 11 of the United States Code, and reports as follows:

**I.     Introduction**

A preeminent modern barbecue restaurant, Smokecraft epitomizes a small business serving the local community. With a loyal patron base, 25 dedicated employees, and aromas that waft well beyond a leasehold footprint, the Debtor operates an equally tantalizing and entertaining business that has quickly gained well-earned notoriety. This case is designed to save that business through the tools so often invoked in this Honorable Court, as Smokecraft looks to reorganize a bank loan, reassess various obligations, and emerge as a financially healthy restaurant operator.

To whatever extent the foregoing may seem cliché, this case does present unique facts. Through the watchful monitoring of its proprietor, the Debtor saw economic harm coming and engaged counsel before any calamitous occurrences came to pass. Indeed, when Smokecraft petitioned for Chapter 11 relief, the Debtor's largest financial obligation—an SBA loan from Capital Bank—was not in default. And while extant obligations owed to trade creditors certainly ought not be overlooked, Smokecraft's foresight in seeking bankruptcy protection before

1

circumstances grew overly dire does meaningfully serve to separate this case from those where relief was sought only after relationship had grown irretrievably strained.

The heart of a plan herein will be pegged to projecting the Debtor's disposable income over a statutorily-compliant forward-looking time horizon, stripping down the secured portion of a bank note to the value of supporting collateral, and endeavoring to create a paradigm where a meaningful return can be made to general unsecured creditors. There is, no doubt, palpable hard work in accomplishing these goals, and Smokecraft is well aware of the efforts requisite to progress toward a plan being docketed and confirmed. But there is also good reason to believe this particular debtor will be able to emerge from the Chapter 11 process as an exemplar of the virtues of the Subchapter V process.

**II.     Progress Thus Far**

As of the filing of this report, the Debtor's case is a month-and-a-half old, being roughly halfway between the petition date and the deadline for the filing of a plan of reorganization. Much of the early stages of this bankruptcy have been focused on the rigors and unfortunately-common headaches of a small business case. In terms of the ordinary rigors of a Subchapter V proceeding, Smokecraft participated in an initial debtor interview, attended a 341 meeting, opened a DIP account, and filed its first monthly operating report (with a level of detail that exceeds what is normally found in such small business filings). Vis a vis the unfortunately-common headaches, Smokecraft has also had to confront smaller trade creditors who elected to discontinue service to the Debtor on account of a bankruptcy filing, including a cleaning company that appears to have stolen a bucket belonging to Smokecraft in the process of hastily clearing out and a food provider that demanded critical vendor treatment on terms so lopsidedly onerous that the Debtor could not in good faith so much as propose them to this Honorable Court.

2

Of perhaps greater import, though, the Debtor—through counsel—has established an open and productive line of communication with the secured bank creditor herein, which has wisely elected to retain the services of a seasoned and upstanding member of the local bankruptcy bar. Conversations on various pertinent topics have been ongoing over a series of weeks. Whether or not those discussions ultimately fetch a consensual plan remains to be seen, and Smokecraft certainly does not mean to feign that any grand bargains are imminent or even close at hand. But there is palpable virtue in knowing a case is proceeding with productive communications behind the scenes, and such offers cause for cautious optimism going forward.

### III.     Forward-looking Efforts

Smokecraft is hopeful that a plan might be docketed comfortably before the formal deadline for so doing. In the coming weeks, discussions with a secured creditor will necessarily continue, just as the Debtor will, too, continue to look to the Subchapter V trustee for guidance on the contours of a plan that might ultimately welcome a consensual confirmation. The May 2024 operating report will soon be filed, with what should be unusually robust numbers, but it also bears notation that a particular confluence of events may have caused that calendar month to be deceptively-lucrative. Still, the Debtor will study its post-petition numbers, confer with counsel, examine historical figures, and work to put forth a series of projections that are as reliable as possible.

The Debtor will also continue to work with other parties to assess the value of collateral, so there is a clear understanding of the extent, *vel non*, to which certain claims are secured. And, without delving too deeply into such matters in this report, Smokecraft will also continue to assess certain legal questions that may be ultimately impactful herein and that, in turn, may also ultimately come before this Honorable Court for resolution.

Most importantly, though, the Debtor will continue to open its doors for business every day, will continue to serve deservingly-acclaimed barbecue to the Washington, DC community, and will continue to employ a staff of devoted individuals. The ultimate viability of a reorganization is in the Debtor's consumer-facing business, being reinforced one order of brisket at a time.

          Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of June 2024, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Catherine Keller Hopkin    chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- Lynn A. Kohen    lynn.a.kohen@usdoj.gov
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- Angela L. Shortall    ashortall@3cubed-as.com, md70@ecfcbis.com
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

4