IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| **Smokecraft Clarendon, LLC** | * | Case No: 24-13609 |
| | | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**CONSENT MOTION FOR ORDER (I) AUTHORIZING THE DEBTOR'S
INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C.
SECTIONS 361, 363 AND 552; (II) GRANTING ADEQUATE PROTECTION;
AND (III) SCHEDULING FINAL HEARING PURSUANT TO
11 U.S.C. SECTION 363(c)(2) AND FED.R.BANKR.P. 4001**

Capital Bank, National Association ("Capital Bank"), by counsel, files this Motion for Order (I) Authorizing the Debtor's Interim Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361, 363 and 552, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing Pursuant to 11 U.S.C. § 363(c)(2) and Fed.R.Bankr.P. 4001 (the "Motion"), and states:

Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. The statutory basis for relief is §§ 361, 363 and 552 of the Bankruptcy Code, and Rule 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Background

4. On April 29, 2024 (the "Petition Date"), the Debtor commenced this Chapter 11 proceeding under Subchapter V of Title 11 of the United States Code.

5. As further described hereinafter, Capital Bank asserts that it is a first priority secured creditor of the Debtor with a blanket lien on all of Debtor's assets.

6. In January 2020, Capital Bank, the Debtor, and the Debtor's majority owner Smokecraft Holdings, LLC ("Holdings") entered into various agreements to fund the

Debtor's renovation and construction on existing improvements in its leased space in Arlington County, VA.  Particularly, Capital Bank, the Debtor, and Holdings (as applicable with respect to each agreement) entered into the following (collectively, and together with all other related documents executed in connection therewith, the "Funding Agreements"):

a. Construction Loan Agreement (the "Loan"), dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;
b. Security Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;
c. Credit Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings, and Andrew C. Darneille (as guarantor);
d. Copyright Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;
e. Patent Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;
f. Trademark Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;
g. Assignment of Contracts, dated as of January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;
h. Subordination of Lien Agreement, dated as of July _, 2019, by and between, KBSIII 3003 Washington, LLC, the Debtor's landlord, the Debtor, and Capital Bank [date not completed in original];
i. U.S. Small Business Administration ("SBA") Authorization issued in connection with the Loan, having an SBA Loan No. of 36035970-10 and an approval date of March 15, 2019, as amended from time to time;
j. SBA Note, dated January 31, 2020, executed by Smokecraft Clarendon, LLC and Smokecraft Holdings, LLC as borrowers; and
k. SBA Unconditional Guarantee, dated January 31, 2020, executed by Andrew C. Darneille as guarantor.

7. Capital Bank asserts that the Funding Agreements granted Capital Bank a lien on all assets of the Debtor (the "Collateral") to secure the obligations created by the Funding Agreements and owed by the Debtor.  Any of the Funding Agreements are available for inspection by request to undersigned counsel.[1]

---

[1] Capital Bank is diligently working with its prior counsel to recover the original fully executed copies of the Funding Agreements.  Notwithstanding, Debtor does not contest that it executed each of the Funding Agreements and that they are enforceable.

4857-5827-0657, v. 5

8.   Capital Bank asserts that its lien was perfected and are entitled to first priority status by virtue of, among other things, a UCC-1 financing statement filed on January 31, 2020 with the Virginia State Corporation Commission at file no.: 202001310319956.

9.   Capital Bank asserts that pursuant to UCC § 9-204, the relevant Funding Agreements bear appropriate and necessary "after-acquired" and prospective indebtedness language and thus the UCC-1 financing statement properly perfected the lien securing the obligations created by the Funding Agreements.

10.   Capital Bank specifically asserts that to the extent that the Debtor's estate holds or receives post-petition any cash from pre-petition credit card receipts or other accounts receivable, that cash is subject to Capital Bank's first priority lien as this lien extends to products and proceeds pursuant to Capital Bank's UCC-1 filing.  This is so because pursuant to 11 U.S.C. § 552, pre-petition security agreements that apply to property acquired pre-petition extend to, among other things, proceeds and products of that property acquired post-petition.  These proceeds and products (including credit card receivables for sales generated prior to the Petition Date but paid out to Debtor on or after the Petition Date) are cash collateral for Capital Bank.

11.   Further, Capital Bank asserts a lien on all of the Debtor's assets, including but not limited to the Debtor's equipment, fixtures, and inventory.  Debtor disputes that Capital Bank has a lien on all fixtures, which dispute the parties do not seek a ruling on with respect to this Motion.

12.   In addition, Capital Bank asserts its lien as to payroll checks to the extent the same had not been negotiated pre-petition (excluding those amounts held in trust for required taxes).

13.   Finally, all of the Debtor's cash on hand, including all cash in the Debtor's bank account as of the Petition Date is subject to Capital Bank's lien and constitutes "cash collateral" within the meaning of 11 U.S.C. § 363(a), in addition to the aforementioned assets in paragraphs 10-12 above (collectively, the "Cash Collateral").

4857-5827-0657, v. 5

14. Capital Bank asserts that the total Cash Collateral as of the Petition Date is not less than $17,630, consisting of $1,444 cash exclusive of tips and taxes from credit card receipts processed on April 29, 2024; $5,645 cash exclusive of tips and taxes from credit card receipts processed on April 28, 2024; $7,563 in payroll that was processed but not yet negotiated by employees as of the Petition Date; $2,000 cash on hand; and $978 in an account held at Capital Bank. The Debtor disputes that all of the amounts reflected in this paragraph constitute cash collateral.

15. Capital Bank asserts that as of the Petition Date the total outstanding indebtedness owed by Debtor to Capital Bank is $917,126.61, consisting of principal of $911,880.18 and interest of $5,246.43. The Debtor scheduled Capital Bank's indebtedness in the amount of $906,017.80, thus Capital Bank anticipates that it will file a proof of claim in this case.

16. The Debtor requires the use of Cash Collateral to meet its ordinary and necessary expenses so that it may maintain and preserve the value of its assets for the benefit of the Debtor's estate, owners, and creditors.

17. The Debtor seeks the interim use of Cash Collateral during an initial period commencing *nunc pro tunc* as of the Petition Date through August 30, 2024 (the "Interim Period") unless sooner terminated under the terms of the proposed interim cash collateral order filed with this Motion or such other order to which Debtor and Capital Bank may agree (the "Interim Order").

18. During the Interim Period, the Debtor and Capital Bank will continue to work together to determine future cash collateral needs and will file any appropriate pleadings to the extent use of Cash Collateral is desirable and necessary for the period subsequent to the Interim Period.

19. Entry of the Interim Order is (a) critical to the Debtor's ability to maximize value for the Debtor's creditors, (b) in the best interest of the Debtor and its estate, and (c) necessary to avoid immediate and irreparable harm to the Debtor and its estate.

Summary of Relief Requested Pursuant to Bankruptcy Rule 4001(b)

20. Pursuant to Rule 4001(b) of the Bankruptcy Rules, the relief requested in this Motion, and the relevant location within the Motion and/or proposed Order, are as follows:

a. Name of Each Entity with Interest in Cash Collateral
   i. Capital Bank

b. Use of Cash Collateral.
   i. Debtor may use the Cash Collateral, *nunc pro tunc*, to the Petition Date in the ordinary course of business for the purposes of paying the Debtor's operating expenses during the Interim Period. The Debtor is authorized to use the Cash Collateral for all actual and customary business expenses incurred during the Interim Period so long as they relate to the categories of expenses set forth in the Cash Flow Projection set forth in the first Monthly Operating Report filed by the Debtor [Dkt. 29]. Debtor shall not make any payments to any insiders (except to the extent of ordinary payroll obligations), nor shall Debtor pay any raises to any employee that cumulatively exceed ten percent (10%) of the wages paid to the respective employee on the Petition Date.

c. Material Terms, Including Duration.
   i. The Debtor shall (a) make monthly adequate protection payments to Capital Bank in the amount of $1,500 on or before the thirtieth (30th) day of each month included in the Interim Period. The first such payment will include a $3,000 payment for (i) the $1,500 payment that is due *nunc pro tunc* as of May 30, 2024 plus (ii) the $1,500 payment that is due June 30, 2024. The monthly adequate protection payments shall be applied to the allowed secured claim of Capital Bank.

d. Lien and Adequate Protection to be provided.
   i. In addition to the adequate protection payment, Capital Bank is granted as adequate protection a valid, binding, first-priority perfected and enforceable security interest and replacement lien on all of the unencumbered pre-petition and post-petition assets of the Debtor of any nature, presently owned or hereafter acquired, and wherever located including but not limited to, accounts receivable, inventory, cash, deposit accounts, chattel paper, goods, equipment, general intangibles, investment property, instruments, documents, and all cash and non-cash proceeds thereof. Effective *nunc pro tunc* as of the Petition Date, Capital Bank shall receive a superpriority administrative claim under Bankruptcy Code Section 507(b) as more fully set forth in the proposed Order at paragraph 5. Such a provision is necessary given the swift rate of erosion in the value of Cash Collateral, and particularly the Debtor's equipment and fixtures.

Relief Requested and Grounds Therefor

21. The standards governing a debtor's use of cash collateral as set forth in Section 363(c)(2) of the Bankruptcy Code, which provides:

> The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph 1 of this subsection, unless -
> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

22. The "provisions of this section" referenced in Section 363(c)(2) include Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

23. Section 361 of the Bankruptcy Code describes, in relevant part, adequate protection as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, **such adequate protection may be provided by**—
> **(1)** requiring the trustee to **make a cash payment or periodic cash payments** to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> **(2) providing to such entity an additional or replacement lien** to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property

11 U.S.C. § 361(emphasis added).

24. Here, Capital Bank requests adequate protection payments of $1,500 per month in order to protect against the diminution in value of its Collateral, including rapidly-depreciating restaurant equipment.

25. In addition, Capital Bank requests the replacement lien and superpriority administrative claim as described above.

26. Capital Bank respectfully asserts and submits that the standards set forth in Bankruptcy Code Sections 363(c)(2) and (e) are satisfied provided the terms of the Interim Order are satisfied.

27. Both the Debtor and Capital Bank consent to the relief requested in this Motion and submits the form of Interim Order attached hereto.

<u>Notice</u>

28. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) those parties who have filed a notice of appearance and request for service of pleadings in this case pursuant to Fed.R.Bankr.P. 2002; and (c) the Debtor. Capital Bank requests that the notices set forth in this paragraph be deemed adequate and complete under the circumstances and that any further notice of the Motion or of the relief requested herein be dispensed with and waived.

<u>Waiver of Memorandum of Law</u>

29. Pursuant to Local Rule 9013-2 of the Local Rules, Capital Bank states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

<u>No Prior Request</u>

30. No prior request for the relief sought in this Motion has been made to this or any other Court by Capital Bank.

WHEREFORE, the Capital Bank requests that this Court:

A. Enter the Interim Order granting the relief requested herein.

B. Authorize the Debtor to use the Cash Collateral on the terms set forth in the Interim Order, in the ordinary course of business for the purpose of paying the Debtor's operating expenses for the period commencing April 29, 2024, through August 30, 2024 (the "Interim Period").

- 8 -

      C.      Schedule a final hearing.

      D.      Grant such other and further relief as this Court deems just and appropriate.

Dated: June 24, 2024

          */s/ Catherine K. Hopkin*
          Catherine Keller Hopkin, 28257
          Corinne D. Adams, 18768
          YVS Law, LLC
          185 Admiral Cochrane Drive, Suite 130
          Annapolis, Maryland  21401
          (443) 569-0788
          chopkin@yvslaw.com; cadams@yvslaw.com

          and

          */s/ Maurice B. VerStandig*
          Maurice B. VerStandig, 18070
          The VerStandig Law Firm, LLC
          9812 Falls Road, #114-160
          Potomac, Maryland 20854
          (301) 444-4600
          mac@mbvesq.com

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on 24th day of June 2024, notice of the foregoing Motion was served by CM/ECF on those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

                                              */s/ Catherine K. Hopkin*
                                              Catherine K. Hopkin

**The following parties received CM/ECF notice of the filing:**

Catherine Keller Hopkin, Esquire
(chopkin@yvslaw.com)
Counsel for Capital Bank N.A.
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401

Lynn A. Kohen, Esquire
(lynn.a.kohen@usdoj.gov)
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

L. Jeanette Rice, Esquire
(jeanette.rice@usdoj.gov)
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

Angela L. Shortall, Subchapter V Trustee
(ashortall@3cubed-as.com)
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202

U.S. Trustee – Greenbelt
(ustpregion04.gb.ecf@usdoj.gov)
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

Maurice Belmont VerStandig, Esquire
(mac@mbvesq.com)
Counsel for Debtor
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854

**The following parties received a copy of the filing by first class mail, postage prepaid:**

Smokecraft Clarendon, LLC; Smokecraft Modern Barbecue
7104 Loch Lomond Drive
Bethesda, MD 20817-4760

Uline
12575 Uline Drive
Pleasant Prairie, WI 53158

Adams Burch LLC DBA Trimark Adams Burch
Attn: Kris Rich
2901 Stanford Ct.
Landover, MD 20785

Adams-Burch, LLC
d/b/a Trimark Adams-Burch
1901 Stanford Court
Hyattsville, MD 20785-3219

Alsco, Inc.
505 E. 200 S
Salt Lake City, UT 84102-2007

Andrew Darneille
7104 Loch Lomond Drive
Bethesda, MD 20817-4760

US Securities and Exchange Commission
Atlanta Reg Office And Reorg
950 E Paces Ferry Rd NE Ste 900
Atlanta GA 30326-1382

Bryan J. Pelino
Rosenberg Pelino LLC
6031 University Boulevard Suite 300
Ellicott City, MD 21043-6151

Buckhead Meat & Seafood Mid-Atlantic, Inc DBA Metropolitan Meat, Seafood & Poultry
1920 Stanford Ct.
Hyattsville, MD 20785-3219

CGC Holdings, Inc.
d/b/a Capital Seaboard
7540 Assateague Drive
Jessup, MD 20794-3271

Capital Bank, National Association
Attn: Chris Mullings, Senior VP
1776 Eye Street, NW Washington, DC 20006-3759

Chill-Craft Company
2600 Cabover Drive Suite K
Hanover, MD 21076-1734

| | | |
|---|---|---|
| Christopher L. Camarra, Esquire<br>Holland & Knight LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC 20006-3962 | Comcast Business<br>1701 John F. Kennedy Blvd.<br>Philadelphia, PA 19103-2838 | Commonwealth of Virginia<br>1957 Westmoreland Street<br>Richmond, VA 23230-3225 |
| Comptroller of Maryland<br>Revenue Administration Division<br>PO Box 549<br>Annapolis, MD 21404-0549 | Crystal Commercial Cleaning Services, LLC<br>9403 Grant Ave Ste. 300<br>Manassas, VA 20110-2568 | Crystal Commercial Cleaning Services, LLC<br>PO Box 41147<br>Arlington, VA 22204-8147 |
| Daisy & Collins LLP<br>20130 Lakeview Center Plaza Suite 400<br>Ashburn, VA 20147-5905 | DoorDash, Inc.<br>303 2nd St. Suite 800<br>San Francisco, CA 94107-1366 | Finance A La Carte<br>316 Golf Course Pkwy<br>Davenport, FL 33837-5522 |
| Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 7346<br>Philadelphia PA 19101-7346 | KBSIII 3003 Washington, LLC<br>c/o KBS<br>3003 Washington Boulevard Suite #95<br>Arlington, VA 22201-2194 | Lyon Bakery, Inc.<br>1900 Clarkson Way<br>Hyattsville, MD 20785-3221 |
| Magnolia Plumbing, Inc.<br>600 Gallatin St NE<br>Washington, DC 20017-2359 | Myzentek LLC<br>46812 Vermont Maple Ter.<br>Sterling, VA 20164-2236 | Office of the Comptroller of Maryland<br>Bankruptcy Unit<br>7 St. Paul Street, 2nd Floor<br>Baltimore, MD 21202-1689 |
| Opentable, Inc.<br>1 Montgomery Street Suite 500 San Francisco, CA 94104-4535 | Pepsi-Cola Company<br>8550 Terminal Road<br>Lorton, VA 22079-1428 | Pest Management Services, Inc.<br>19980 Highland Vista Drive Suite 180<br>Ashburn, VA 20147-5998 |
| Roberts Oxygen Company, Inc.<br>15830 Redland Road<br>Derwood, MD 20855-2292 | Safety First Services, Inc.<br>6722B Industrial Drive<br>Beltsville, MD 20705-1237 | Sean T. Morris, Esquire<br>The Morris Law Firm LLC<br>4845 Rugby Avenue Suite 302<br>Bethesda, MD 20814-3018 |
| Secretary of the Treasury<br>15th and Pennsylvania Ave., N.W.<br>Washington, DC 20220-0001 | State of Maryland DLLR<br>Division of Unemployment Insurance<br>1100 N. Eutaw Street, Room 401<br>Baltimore, MD 21201-2226 | StratEx HoldCo, LLC<br>1521 Concord Pike Suite 201<br>Wilmington, DE 19803-3645 |
| TD Bank, N.A.<br>PO BOX 1931<br>Burlingame, CA 94011-1931 | TD Bank, National Association<br>1701 Marlton Pike E<br>Cherry Hill, NJ 08003-2335 | TD Bank, National Association<br>Legal Department<br>Two Portland Square<br>Portland, ME 04101 |

- 2 -

| | | |
|---|---|---|
| Taxing Authority of Montgomery County<br>Division of Treasury<br>255 Rockville Pike, Ste. L-15<br>Rockville, MD 20850-4188 | The Chefs' Warehouse Mid-Atlantic, LLC<br>c/o Dairyland US Corporation<br>1300 Viele Ave.<br>Bronx, NY 10474-7134 | The Pels Law Firm<br>4845 Rugby Ave. 3rd Floor<br>Bethesda, MD 20814-3018 |
| Toast Capital LLC<br>401 Park Drive<br>Boston, MA 02215-3325 | Toast Tab of Delaware Inc.<br>d/b/a Toast Inc. 401 Park Dr. Suite 801<br>Boston, MA 02215-3372 | US Attorney's Office for The District of MD<br>36 S Charles Street, Fourth Floor<br>Baltimore MD 21201-3020 |
| Vend Lease Company, Inc.<br>8100 Sandpiper Cir. Suite 300<br>Nottingham, MD 21236-4992 | Washington Gas Light Company<br>d/b/a Washington Gas<br>1000 Maine Ave, SW<br>Washington, DC 20024-3496 | WebBank<br>215 South State Street Suite 1000<br>Salt Lake City, UT 84111-2336 |