**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In re:<br><br>**SMOKECRAFT CLAREDON, LLC**<br><br>**Debtor.** | **Case No. 24-13609-MCR**<br>**(Chapter 11 – Subchapter V)** |

**UNITED STATES TRUSTEE'S OBJECTION**
**TO DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN**

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "United States Trustee"), by counsel, hereby files this objection to the Debtor's Chapter 11, Subchapter V Plan ("Plan")[1] because it fails to recognize the hard truth, i.e., that the business is failing, and fails to give creditors and parties- in-interest the information that is needed to be able to vote intelligently on the Plan.

In nearly every pleading filed with the Court, the Plan being no exception, the Debtor boasts about its award-winning cuisine and confidently calls itself "the preeminent purveyor of barbecue in the Washington, DC area." Dkt. 49, Plan at 1.  The Debtor goes so far as to compare its barbecue to other "hallmarks of American culture" such as baseball and fireworks. *Id.*  It is unfortunate, that the Debtor's bravado was not matched by its actual performance.  In fact, for the month of June 2024, which is the last filed monthly operating report, the Debtor operated at a net negative of $7,527.84.  Whilst in bankruptcy, the Debtor has netted a total profit of only $438.74.  Given that this dismal performance does not fit the Debtor's narrative of total

---

[1] The Debtor filed two plans.  One plan was filed on July 29, 2024, at Dkt. 46.  The other Plan was filed on August 8, 2024, at Dkt. 49.  Counsel for the Debtor has informed the United States Trustee that the only difference is two plans is the size of the font used in Exhibit 2, which contain the projections.

dominance in the area of local barbecue, it is not surprising that the Debtor did not include this information in its Plan.

**The Debtor's Liquidation Analysis is Flawed.**

Instead of coming to grips with its lackluster financial performance, the Debtor concentrates on the liquidation analysis to support its plan to pay only 1.1% of general unsecured claims.  Like most restaurants, the Debtor has very few hard assets.  The real assets of any restaurant, however, is not the plates and silverware; instead, the real value of a restaurant lies in the intangibles like the Debtor's name, original recipes, good-will, and lease location.  The liquidation analysis in the Plan values the plates and silverware, but not any of the intangibles. Interesting to note that in its 2023 Federal Tax Return tax return, the Debtor values intangibles to be worth $193,164.

The liquidation analysis also makes the mistake of valuing the collateral based on book value and not appraised value.  If the Debtor is going to try to pay a parsley 1.1% of general unsecured claims, then, the least it can do is to get its assets appraised to remove any doubt that the Plan is better for creditors than a liquidation.

The Debtor also uses the bank balances as of the Petition Date in the liquidation analysis instead of the current bank balances.  For examples, on Schedule AB, the Debtor scheduled $69,073.70 in cash and cash equivalents.  However, on the June monthly operating report, the Debtor reported at the end of the month that its cash on hand totaled $76.229.11.  The Debtor should be required to use actual bank balances in its liquidation analysis.

Similarly, it is unfair for the Debtor to value the potential litigation against its former law firm at $0.  While the Debtor states that it is a hard asset to value, the Debtor has hardly given it much effort – at least none that is described in the Plan.  The Plan gives no details about this

litigation.  Before a creditor or party-in- interest can agree that the litigation is valueless, the

Debtor should provide the basis of the claim, the amount of its damages, the cost of litigation, the

likelihood of success, whether the law firm has malpractice insurance, and the amount of the law

firm's alleged set-off for unpaid legal fees.  The Plan does not have "enough meat on the bone."

Lastly, the liquidation analysis does not mention the Debtor's liquor license.  In some

instances, the liquor licenses can be a restaurant's most valuable asset.

### The Debtor's Projections are Flawed.

The projections[2] set forth in the Plan are also flawed.  While the Debtor discusses the

possibility of increases in the cost of food and labor, it is not clear whether the Debtor accounted

for inflation in the cost of food and alcohol in the projections.  The Debtor maintains a consistent

gross margin of 68% throughout its projections, which means it would have to increase its prices

to offset the increase in inflation.  If that were the case, one would expect to see the cost of sales

increase by the inflation rate.  It does not appear that this occurred.  It seems highly unlikely for

the Debtor not to increase its sale prices in the next five years. The projections should take into

account a fair and reasonable increase in the Debtor's sales as a result of increased prices.

The United States Trustee is also concerned that the Debtor projects a net loss of

$221,783.40 at the end of 2024, which begs the question of whether the Plan is even feasible.

The United States Trustee is further concerned because the Debtor's "actuals" as stated in

the projections are not consistent with what was previously reported in the monthly operating

reports.  For example, on page 44 of 170, the Debtor states that its actual net sales for the month

of April 28, 2024 – May 25, 2024 are $163,363.27; however, the Profit & Loss Statement

---

[2] The United States Trustee objects to the size of the font used in the projections in Exhibit 2, Dkt. 46.  The Plan with the projections will be mailed to certain creditors and parties-in-interest, and the font is too small to read. The font issue was corrected in Dkt. 49-2.

attached to the May Monthly Operating Report, Dkt. 35, shows actual net sales of $184,845.55.

On page 51 of 170, the Debtor states that its actual net sales for the month of May 27, 2024 –

June 30, 2024 is $194,853.75; however, the June Month Operating Report, Dkt. 43, shows actual

net sales of $168,422.63. The "Toast" reports, which is the Debtor's point sale report that was

attached to the monthly operating reports, shows net sales for May of $182,331.32 and June of

$168,470.64. The United States Trustee does not understand why Debtor would use "actuals"

that are less than what was reported as "actuals" on the Toast reports and monthly operating

reports.

Also, the Debtor appears to use the wrong years in his projections past the first 12

months. There should be a projection for the years 2024 to 2029. However, the headers for each

column never change to 2026, 2027, 2028, or 2029.

### The Debtor's "Escheat" is Detrimental to Creditors.

In Section 8.10, the Debtor states that any unclaimed distributions after 90 days will be

donated to the University of Miam School of Law. Any unclaimed distribution should be repaid

to the unsecured creditors. It should go without saying that the unsecured creditors would

appreciate any increase in their currently projected 1.1% distribution.

### Other

The Plan should also be amended to include the following provisions:

- **Notice of Effective Date:** The Debtor will file a Notice of Effective Date within seven days of the Effective Date.
- **Progress Reports:** As required under Local Rule 3022-1(d), the Debtor will file, and serve upon the U.S. Trustee, a progress report six (6) months after the entry of the confirmation order and every six (6) months thereafter, each report detailing the progress made towards full administration of the Plan, to include distributions made to-date and any other substantial activities that would impede full administration.

WHEREFORE, the United States Trustee requests that the Plan be denied and for such other and further relief as the nature of his cause may require.

Date:
                                    **GERARD R. VETTER**
                                    Acting United States Trustee for Region 4

                                    By Counsel:

                                    */s/ Lynn A. Kohen*
                                    Lynn A. Kohen
                                    Trial Attorney
                                    6305 Ivy Lane, Suite 600
                                    Greenbelt, MD  20770
                                    (301) 344-6216
                                    Fax: (301)-344-8431
                                    E-mail: Lynn.A.Kohen@usdoj.gov

5

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of August 2024, a copy of the Objection to the Debtor's Chapter 11, Subchapter V Plan was served by ECF notification upon the following:

- **Catherine Keller Hopkin**   chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- **Lynn A. Kohen**   lynn.a.kohen@usdoj.gov
- **L. Jeanette Rice**   Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Angela L. Shortall**   ashortall@3cubed-as.com, md70@ecfcbis.com
- **US Trustee - Greenbelt**   USTPRegion04.GB.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

And by first-class mail, postage prepaid to:

**Uline**
12575 Uline Drive
Pleasant Prairie, WI 53158

**Smokecraft Clarendon, LLC**
7104 Loch Lomond Drive
Bethesda, MD 20817

*/s/ Lynn A. Kohen*
Lynn A. Kohen

6