**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Smokecraft Clarendon, LLC** | **Case No. 24-13609** |
| **Debtor.** | |

**<u>SECOND CONSENT</u> ORDER (I) AUTHORIZING THE DEBTOR'S
INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C.
SECTIONS 361, 363 AND 552; (II) GRANTING ADEQUATE PROTECTION;
AND (III) SCHEDULING FINAL HEARING <u>PURSUANT TO
11 U.S.C. SECTION 363(c)(2) AND FED.R.BANKR.P. 4001</u>**

The Court ~~having~~<u>has</u> considered Capital Bank, National Association's ("Capital Bank")[1] Consent Motion for Order (I) Authorizing Smokecraft Clarendon, LLC's (the "Debtor") Interim Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361, 363 and 552, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing Pursuant to 11 U.S.C. § 363(c)(2) and Fed.R.Bankr.P. 4001 (the "Motion"), to which motion the Debtor consents; and any opposition thereto; the evidence submitted and arguments proffered or adduced at the hearing before the Court <u>on July 22, 2024</u>, (the "<u>Hearing</u>") and upon the record of this Case; and adequate notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Rules, and having determined that no other or further notice need be provided, and it

---

[1] ~~Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.~~

[1] <u>Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.</u>

appearing to the Court that the relief requested is fair and reasonable and in the best interests of the Debtor, the estate, and its creditors, and is necessary for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor~~,~~; and

~~THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND EVIDENCE SUBMITTED DURING THE HEARING:~~

**~~Petition Date.~~** ~~On April 29~~WHEREAS, on July 24, 2024 ~~(the "Petition Date"),~~Court entered an Order (I) Authorizing the Debtor's Interim Use of Cash Collateral Pursuant to 11 U.S.C. Sections 361, 363 and 552; (II) Granting Adequate Protection; and (III) Scheduling Final Hearing Pursuant to 11 U.S.C. Section 363(c)(2) and Fed. R. Bankr. Proc. 4001 (the "First Interim Order") [Dkt. 44]; and

WHEREAS, the Debtor ~~filed~~has a ~~petition for relief under chapter 11~~ continuing and immediate need to use cash collateral past the Interim Period, which expires on August 31, 2024; and

WHEREAS, Capital Bank and the Debtor have agreed to extend the Interim Period, subject to authorization and approval of the Bankruptcy ~~Code in~~Court, through and including October 31, 2024, under the terms set forth below;

~~a.~~ NOW THEREFORE, it is by the United States Bankruptcy Court for the District of Maryland ~~(the "Court") thereby commencing this case.~~hereby

~~b.~~ ORDERED, that the Debtor is authorized to continue the use of Cash Collateral under the following terms and conditions set forth herein. All objections to this Order to the extent not withdrawn, waived, settled or resolved, and all reservations of rights included therein, are denied and overruled on the merits. This Order shall become effective immediately upon its entry.~~Notice. Upon the record presented to the Court at the~~

2

~~Hearing, and under the circumstances set forth therein, notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 4001 to: (i) the Office of the United States Trustee for the District of Maryland; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor; and (iii) all other parties entitled to notice pursuant to Local Rule 9013-5 (collectively, the "Notice Parties"), which notice was appropriate under the circumstances. No further notice of, or hearing regarding, the entry of this Order and the relief set forth herein is necessary or required.~~

~~c.    **Jurisdiction and Venue.** This Court has core jurisdiction over this case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for relief sought in this Motion are sections 361, 363, and 552 of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and Local Rules 4001-5, 9013-1, and 9013-5.~~

~~d.    **Prepetition Debt and Cash Collateral.** In January 2020, Capital Bank, the Debtor, and the Debtor's majority owner Smokecraft Holdings, LLC ("Holdings") entered into various agreements to fund the Debtor's renovation and construction on existing improvements in its leased space in Arlington County, VA.~~

    ~~i.    **Prepetition Loan Documents.** Capital Bank, the Debtor, and Holdings (as applicable with respect to each agreement) entered into the following (collectively, and together with all other related documents executed in connection therewith, the "Funding Agreements"):~~

        ~~a.   Construction Loan Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;~~
        ~~b.   Security Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;~~
        ~~c.   Credit Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings, and Andrew C. Darneille (as guarantor);~~
        ~~d.   Copyright Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;~~

3

~~e.  Patent Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;~~
~~f.  Trademark Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;~~
~~g.  Assignment of Contracts, dated as of January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;~~
~~h.  Subordination of Lien Agreement, dated as of July __, 2019, by and between, KBSIII 3003 Washington, LLC, the Debtor's landlord, the Debtor, and Capital Bank;~~
~~i.  U.S. Small Business Administration ("SBA") Authorization issued in connection with the Loan, having an SBA Loan No. of 36035970-10 and an approval date of March 15, 2019, as amended from time to time;~~
~~j.  SBA Note, dated January 31, 2020, executed by Smokecraft Clarendon, LLC and Smokecraft Holdings, LLC as borrowers; and~~
~~k.  SBA Unconditional Guarantee, dated January 31, 2020, executed by Andrew C. Darneille as guarantor.~~

~~ii.  **Prepetition First Lien Loan Obligation.** As of the Petition Date, the Debtor was indebted to the Debtor in the amount of $917,126.61, consisting of principal of $911,880.18 and interest of $5,246.43 (the "Prepetition Lender Obligation"). The Debtor acknowledges that the Prepetition Lender Obligation constitutes an allowed, legal, valid, binding, enforceable and non-avoidable obligation of the Debtor, and is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess, shall not assert, hereby forever releases, and is forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Lender Obligation, except as otherwise provided herein.~~

~~iii.  **Cash Collateral.** As of the Petition Date, the Prepetition Lender Obligation was secured pursuant to the Funding Agreements by valid, perfected, enforceable and non-avoidable first priority security interests and liens (the "Prepetition Lender Liens") granted by the Debtor to Capital Bank under the Funding Agreements, in all of the existing and after-acquired assets of the Debtor as set forth in the Funding Agreements (the "Cash Collateral"), subject to any other agreements subordinating, waiving or abrogating such security interests and liens, and such security interest is perfected and has priority over all other security interest. Notwithstanding, Debtor reserves its right to seek a finding that Capital Bank's priority security interest does not extend to certain fixtures, and Capital Bank reserves all rights with respect to its position that it does.~~

4

~~e.~~ ~~**Request for Use of Cash Collateral.** The Debtor seeks to use Cash Collateral on the terms described herein to administer the case and fund the Debtor's operations.~~

~~f.~~ ~~**Immediate Need for Use of Cash Collateral.** The Debtor has an immediate and critical need to use the Cash Collateral to, among other things, (a) permit the orderly continuation of the operation of the Debtor's business, (b) maintain business relationships with customers, vendors, and suppliers, (c) make payroll, and (d) satisfy other working capital and operational needs. The use of Cash Collateral is in the best interest of the estate and necessary and vital to the preservation and maintenance of the going concern value of the Debtor. Immediate and irreparable harm will be caused to the Debtor and the estate if permission to use Cash Collateral is not granted. The adequate protection provided in this Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.~~

The terms of the Debtor's continued use of Cash Collateral are as follows:

~~g.~~a. **Use of Cash Collateral.** As a condition to the authorization to use Cash Collateral, Cash Collateral shall be used solely in accordance with the terms and conditions of this Order, and shall only be used for any actual and customary business expenses incurred during the Second Interim Period, as that term is defined below, so long as they relate to the categories of expenses set forth in the Cash Flow Projection set forth in the first Monthly Operating Report filed by the Debtor [Dkt. 30]. Debtor shall not make any payments to any insiders aside from ordinary wage payments and ordinary expense reimbursements, nor shall Debtor pay any raises to any employee that cumulatively exceed ten percent (10%) of the wages paid to the respective employee on the Petition Date.

~~h.~~b. **Good Cause.** Good cause has been shown for entry of this Order, and the

5


entry of this Order is in the best interests of the Debtor, the estate and its creditors. Among other things, the Debtor has an immediate need for the liquidity provided by use of Cash Collateral to avoid immediate, irreparable harm, and the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to pay critical expenses necessary to maximize the value of the estate. The use of Cash Collateral and the proposed adequate protection arrangements, as set forth in this Order, are fair and reasonable under the circumstances.

~~i.~~c.    **Immediate Entry.** Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

~~NOW, THEREFORE, based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,~~

~~IT IS HEREBY ORDERED THAT:~~

~~1.    **Motion Granted.** The use of Cash Collateral is authorized subject to the terms and conditions set forth in this Order. All objections to this Order to the extent not withdrawn, waived, settled or resolved, and all reservations of rights included therein, are denied and overruled on the merits. This Order shall become effective immediately upon its entry.~~

~~2.~~1.    **Replacement Lien.** Capital Bank is granted as adequate protection a valid, binding, first-priority perfected and enforceable security interest and replacement lien (the "Replacement Lien") on all of the unencumbered pre-petition and post-petition assets of the Debtor of any nature, presently owned or hereafter acquired, and wherever located including but not limited to, accounts receivable, inventory, cash, deposit accounts, chattel paper, goods, equipment, general intangibles, investment property, instruments, documents, and all cash and non-cash proceeds thereof (collectively with Cash Collateral, the "Capital Bank Collateral").  Capital Bank's Replacement Liens shall be valid, binding, enforceable and perfected liens in all Capital Bank Collateral, in each

6

case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Cash Collateral.

3.2.   **Disposition of Collateral.** The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Capital Bank Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Order, without the prior written consent of Capital Bank (and no such consent shall be implied from any other action, inaction or acquiescence by Capital Bank or from any order of this Court), which consent shall not unreasonably be withheld or delayed. Notwithstanding anything otherwise provided herein, 100% of any net cash proceeds of any sale of Capital Bank Collateral outside of the ordinary course of business shall be used to immediately satisfy Capital Bank's Prepetition Lender Lien and Replacement Lien.

4.3.   **Superpriority Claim.** Effective nunc pro tunc as of the Petition Date, Capital Bank shall receive a superpriority administrative claim (the "Adequate Protection Superpriority Claim") to the extent Capital Bank has an allowable administrative expense claim under Bankruptcy Code Section 507(b), in a sum equal to any post-petition diminution of the Capital Bank Collateral. The allowed Adequate Protection Superpriority Claim shall have (a) priority over any and all unsecured claims against the Debtor or the estate and all administrative expense claims, with the exception of approved claims of the Subchapter V Trustee, to include claims incurred after confirmation should the case be confirmed under Bankruptcy Code section 1129(b), at any time existing or arising, of any kind or nature whatsoever, including, subject to the above limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), and 726, as applicable, and any other provision of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtor and the estate, and any successor thereto or other estate representative to the extent permitted by law. Such a provision is necessary given the swift rate of erosion in the value of Cash Collateral, and particularly the Debtor's equipment and fixtures.

5.4.   **Adequate Protection.** In addition to the adequate protection described above, the

Debtor shall make monthly adequate protection payments to Capital Bank in the amount of $1,500 on or before the thirtieth (30th) day of each month in the Interim Period (the "Adequate Protection Payments"). ~~The first such payment will include a $1,500 payment for each of the payments that are due *nunc pro tunc* as of May 30, 2024 and June 30, 2024.~~ The Adequate Protection Payments together with the Adequate Protection Superpriority Claim, the Replacement Lien, and the Adequate Protection Payments, the "Adequate Protection Obligations") shall be applied to Capital Bank's allowed secured claim.

~~6.~~5.     **Authorization to Use Cash Collateral.** Subject to the terms and conditions of this Order, the Debtor is authorized to use the Capital Bank Collateral in the ordinary course of business for the purpose of paying the Debtor's operating expenses for the period commencing ~~April 29~~September 1, 2024, through ~~August 30~~October 31, 2024 (the "Second Interim Period"). Nothing in this Order shall authorize the disposition of any assets of the Debtor outside the ordinary course of business, or the use of Capital Bank Collateral or other proceeds resulting therefrom, except as permitted by this Order, as applicable.

(a)     Capital Bank's consent to, or acknowledgement of, the Debtor's use of Cash Collateral to pay normal and ordinary post—petition expenses shall not be construed as consent to use the proceeds of the Capital Bank Collateral beyond ~~August 30~~October 31, 2024, or after an Event of Default, regardless of whether the aggregate funds have been expended.

(b)     The Debtor's use of Cash Collateral may be modified by the Debtor only with the express written consent of Capital Bank in its sole discretion, absent further order of the Court.

~~7.~~6.     **Perfection of Replacement Lien.** This Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Replacement Lien, without the necessity of filing or recording any financing statement, notice, or other instrument or document which may otherwise be required under the law or regulation of any

8

jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non- bankruptcy law) the Replacement Lien or to entitle Capital Bank to the priorities granted herein. Notwithstanding the foregoing, Capital Bank is authorized, but not required, to file, as it deems necessary or advisable, such financing statements, security agreements, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Replacement Lien and all such financing statements, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Replacement Lien. Capital Bank may, in its discretion, file an electronic copy or photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.

     8.7.   **Modification of Automatic Stay.** The automatic stay of section 362 of the Bankruptcy Code is modified and vacated to the extent necessary to permit the Debtor and Capital Bank to accomplish the transactions contemplated by this Order.

     9.8.   **Payments Held in Trust.** Except those held for the payment of allowed claims of the Subchapter V Trustee and as otherwise expressly permitted in this Order, if any person or entity receives any payment on account of a security interest in Capital Bank Collateral or receives any Capital Bank Collateral or any proceeds therefrom prior to indefeasible payment in full in cash of the Prepetition Lender Obligation under the Funding Agreements, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds in trust for the benefit of Capital Bank and shall immediately turn over such proceeds to Capital Bank, for application in accordance with this Order.

     10.9.   **Maintenance of Collateral.** Until the payment in full of the Prepetition Lender Obligation, the Debtor shall: (a) insure the Capital Bank Collateral as required under the Funding Agreements, as applicable; and (b) maintain the cash management system, if any, consistent with the terms and conditions of any order(s) governing the Debtor's cash management systems.

~~11.~~10.  **Rights and Remedies Upon Default.** The occurrence of any of the following shall constitute an event of default under this Order: (a) any default, violation or breach of any of the terms of this Order, including the failure of the Debtor to use the Capital Bank Collateral in strict compliance with this Order, (b) the failure of the Debtor to file monthly operating reports in this bankruptcy case, (c) conversion of the case to a case under Chapter 7 of the Bankruptcy Code, (d) the appointment of a Chapter 11 trustee in the case other than the Subchapter V Trustee, (e) the failure to timely pay all Adequate Protection Payments to Capital Bank as set forth in the Motion, (e) the failure to timely pay all payroll obligations, except for any such obligations owed to insiders of the Debtor, (f) the appointment of an examiner in the case, (g) the dismissal of the case, and/or (h) the discontinuation of the Debtor's business or the issuance of an Order for the Debtor to discontinue its business (individually, an "Event of Default" and, collectively, "Events of Defaults"). Upon an Event of Default, Capital Bank shall deliver written notice to the Debtor and its counsel of such default and may declare a termination, reduction, or restriction on the ability of the Debtor to use Capital Bank Collateral. The Debtor shall have four (4) business days thereafter to cure the alleged default and, after two (2) events of default, the Debtor will have no further cure right should a third default be declared by Capital Bank, unless otherwise agreed to by Capital Bank in its sole discretion. In the event the Debtor does not cure the default as required hereby, or upon three events of default, Capital Bank may file a notice with the Court declaring such Event of Default.

~~12.~~11.  **Rights and Remedies Following Notice to Court of Event of Default.** Three (3) Business Days following the filing of a Notice of Event of Default, Capital Bank shall be entitled to exercise all rights and remedies in accordance with the Funding Agreements, this Order and applicable law and the automatic stay of section 362 of the Bankruptcy Code shall automatically, without further Court order, be lifted to the extent necessary to allow Capital Bank to pursue all rights and remedies in accordance with the Funding Agreements, this Order, and applicable law.

~~13.~~12.  **Proofs of Claim.** Capital Bank shall not be required to file a proof of claim in this case, and the entry of this Order shall be deemed to constitute a timely filed proof of claim. Any

10

order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in this case shall not apply to Capital Bank. Notwithstanding the foregoing, Capital Bank may in its sole discretion, but is not required to, file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in this case for any claim allowed herein.

14.13.  **Limitations on Use of Capital Bank Collateral.** Except as otherwise permitted in this Order, Capital Bank Collateral may not be used, directly or indirectly, by the Debtor, or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with (a) preventing, hindering, or delaying any of Capital Bank's enforcement or realization upon any of the Capital Bank Collateral; (b) using or seeking to use Capital Bank Collateral without the permission of Capital Bank, outside the ordinary course of business, or selling or otherwise disposing of Capital Bank Collateral without the consent of Capital Bank or as permitted by the Funding Agreement or this Order; (c) may not use or seeking to use any insurance proceeds constituting Capital Bank Collateral without the consent of Capital Bank; (d) except as otherwise provided herein, seeking to amend or modify any of the rights granted to Capital Bank under this Order or the Funding Agreements, including seeking to use Capital Bank Collateral on a contested basis; (e) litigating, objecting to, challenging or contesting in any manner in any way the Replacement Lien, the Adequate Protection Superpriority Claim, the Prepetition Lender Obligation, the Capital Bank Collateral or, as the case may be, the Cash Collateral, or any other claims held by or on behalf of Capital Bank, except as otherwise provided herein;  (f) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, avoidance actions or applicable state law equivalents or actions to recover or disgorge payments, against Capital Bank or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, except as otherwise provided herein; (g) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Lender

Obligation, the Replacement Lien, or any other liens or interests of Capital Bank, except as otherwise provided herein; or (h) seeking to subordinate, recharacterize, disallow or avoid the Prepetition Lender Obligation.. Notwithstanding anything else herein, the Debtor is authorized to use Cash Collateral to pay ordinary operating expenses, as more fully described above in Recital (g), so long as it is in compliance with the terms of this Order.

~~15.~~14. **Waivers.** Subject to the provisions of this Order, no costs or expenses of administration of this case shall be charged against or recovered from or against Capital Bank with respect to the Capital Bank Collateral, pursuant to Section 105 or Section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of Capital Bank, and no such consent shall be implied from any action, inaction, or acquiescence of Capital Bank.

(a) **Section 552(b).** Both Capital Bank and the Debtor reserve all rights with respect to the extension of any lien rights in proceeds, product, offspring and profits of any of the Cash Collateral.

~~16.~~15. **No Lender Liability.** In determining to permit the use of Capital Bank Collateral, Capital Bank shall not owe any fiduciary duty to the Debtor, the Debtor's creditors, or the estate. Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon Capital Bank of any claims arising from the prepetition or postpetition activities of the Debtor and its affiliates, if any (as defined in section 101(2) of the Bankruptcy Code).

~~17.~~16. **Limitation of Liability.** Nothing in this Order, the Funding Agreements, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon Capital Bank of (a) any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of the Debtor's business, or in connection with any restructuring efforts or (b) any fiduciary duties to the Debtor, the Debtor's creditors, or the estate. Capital Bank shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Capital Bank Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in value thereof, or (iv) any

act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person. All risk of loss, damage, or destruction of the Capital Bank Collateral shall be borne by the Debtor. The foregoing notwithstanding, the Debtor shall have a period of forty five (45) calendar days, from the date of this order, to review the existence, *vel non*, of any claims the Debtor may hold against Capital Bank on account of pre-petition activities and, should the Debtor determine any such claim(s) to be extant, the Debtor may assert such claim(s) within the subject forty five (45) calendar day period.

18.17. **Insurance Proceeds and Policies.** Upon entry of this Order and to the fullest extent provided by applicable law, Capital Bank shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtor that in any way relates to the Capital Bank Collateral.

19.18. **Binding Effect of this Order.** Immediately upon entry of this Order by this Court, the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtor, Capital Bank, all other creditors of the Debtor, and all other parties- in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the case.

20.19. **Necessary Actions.** Capital Bank is authorized and directed to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Order.

21.20. **Enforceability.** This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof. Notwithstanding applicable Bankruptcy Rules and Local Rules, and the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

22.21. **Rights Reserved.** Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of Capital Bank to seek any other or supplemental relief in respect of the Debtor; (b) the rights of Capital Bank under the Funding Agreements, the Bankruptcy Code or applicable non-

bankruptcy law, including, without limitation, the right to request modification of the automatic stay of section 362 of the Bankruptcy Code, or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of Capital Bank.

23.22.  **Headings.**  All paragraph headings used in this Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

24.23.  **Expiration of Cash Collateral.**  The Debtor's authorization for use of cash collateral shall expire on AugustOctober 31, 2024.

25.24.  **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to this Order.

CONSENTED TO:

/s/ Catherine K. Hopkin
Catherine Keller Hopkin, 28257
John Rott, 22129
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
chopkin@yvslaw.com
jrott@yvslaw.com
(443) 569-0778
Counsel for Capital Bank, National Association

/s/ Maurice B. VerStandig
Maurice B. VerStandig, 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
(301) 444-4600
mac@dcbankruptcy.com
Counsel for the Debtor

I HEREBY CERTIFY that the terms of the copy of the Consent Order submitted to the Court are identical to those set forth in the original; and the signatures represented by the /s/ on this copy reference the signatures of consenting parties on the original consent order.

/s/ Catherine K. Hopkin
Catherine Keller Hopkin

14

cc: All Counsel of Record
    All Parties-In-Interest

**-END OF ORDER-**

**Formatted:** Centered, Space Before: 0 pt