IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| Smokecraft Clarendon, LLC | * | Case No: 24-13609 |
| | | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**CAPITAL BANK NATIONAL ASSOCIATION'S**
**OBJECTION TO DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN**

Capital Bank, National Association ("Capital Bank"), by counsel, files this Objection to Debtor's Chapter 11, Subchapter V Plan ("Plan")[1] ("Objection"), because it fails to comply with the obligations imposed by the United States Bankruptcy Code. In support of this Objection, Capital Bank states as follows:

## I.     INTRODUCTION

The Court should deny confirmation of the Plan because it fails to comply with the obligations imposed by Sections 1191 and 1129[2], including that (i) it dramatically undervalues Capital Bank's collateral, which Capital Bank has appraised and which appraisal is significantly higher than the proposed Plan distributions to Capital Bank; and (ii) as pointed out by the objection filed by the Office of the United States Trustee [Dkt. 51], the proposed plan is not feasible and not based on credible projections backed up by historical and other information necessary to corroborate the accuracy of the projections.

The Court should deny confirmation of the Plan.

## II.     BACKGROUND

1.     On April 29, 2024 (the "Petition Date"), the Debtor commenced this Chapter 11 proceeding under Subchapter V of Title 11 of the United States Code.

---

[1] The Debtor filed two plans. One plan was filed on July 29, 2024, at Dkt. 46. The other Plan was filed on August 8, 2024, at Dkt. 49. The only apparent difference between the two plans is the size of the font used in Exhibit 2, for the July 29, 2024, plan was significantly smaller.

[2] All Section references are to the United States Bankruptcy Code.

2. As further described hereinafter, Capital Bank is a first-priority secured creditor of the Debtor with a blanket lien on all of Debtor's assets.

3. In January 2020, Capital Bank, the Debtor, and the Debtor's majority owner Smokecraft Holdings, LLC ("Holdings") entered into various agreements to fund the Debtor's renovation and construction on existing improvements in its leased space in Arlington County, VA. Particularly, Capital Bank, the Debtor, and Holdings (as applicable with respect to each agreement) entered into the following (collectively, and together with all other related documents executed in connection therewith, the "Funding Agreements"):

    a. Construction Loan Agreement (the "Loan"), dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;

    b. Security Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings;

    c. Credit Agreement, dated as of January 31, 2020, by and among Capital Bank, the Debtor, and Holdings, and Andrew C. Darneille (as guarantor);

    d. Copyright Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;

    e. Patent Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;

    f. Trademark Security Agreement, dated January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;

    g. Assignment of Contracts, dated as of January 31, 2020, by the Debtor and Holdings in favor of Capital Bank;

    h. Subordination of Lien Agreement, dated as of July 2019, by and between, KBSIII 3003 Washington, LLC, the Debtor's landlord, the Debtor, and Capital Bank [date not completed in original];

    i. U.S. Small Business Administration ("SBA") Authorization issued in connection with the Loan, having an SBA Loan No. of 36035970-10 and an approval date of March 15, 2019, as amended from time to time;

    j. SBA Note, dated January 31, 2020, executed by Smokecraft Clarendon, LLC and Smokecraft Holdings, LLC as borrowers; and

    k. SBA Unconditional Guarantee, dated January 31, 2020, executed by Andrew C. Darneille as guarantor.

4869-6534-9350, v. 1

4. The Funding Agreements granted Capital Bank a lien on all assets of the Debtor (the "Collateral") to secure the obligations created by the Funding Agreements and owed by the Debtor. Debtor does not contest that it executed each of the Funding Agreements and that they are enforceable, and the Court has granted orders authorizing the use of Capital Bank's cash collateral.

5. Capital Bank's blanket lien is perfected and as evidenced by, among other things, a UCC-1 financing statement filed on January 31, 2020, with the Virginia State Corporation Commission at File No.: 202001310319956.

6. Capital Bank asserts that pursuant to UCC § 9-204, the relevant Funding Agreements bear appropriate and necessary "after-acquired" and prospective indebtedness language and, thus, the UCC-1 financing statement properly perfected the lien securing the obligations created by the Funding Agreements.

7. Accordingly, Capital Bank holds a first-priority blanket lien on all of the Debtor's assets including, but not limited to, the Debtor's equipment, fixtures, and inventory. Debtor disputes that Capital Bank has a lien on all fixtures.

8. On July 8, 2024, Capital Bank filed a proof of claim asserting a total claim of $917,126.61 (the "Claim"), of which $515,268.11 of the claim is secured, and $401,858.50 is unsecured. Since the filing of the Claim, Capital Bank has obtained an appraisal of its collateral.

9. On July 31, 2024, AAA Certified Appraisers, LLC (the "Appraiser") issued a report indicating that the appraised value of certain machinery and equipment items owned by the Debtor and located on the Debtor's premises (the "Appraised Collateral"), had a fair market value of $158,420.00 as of July 18, 2024. (See Exhibit 1.)

10. The Appraiser categorized the Appraised Collateral into two groups. The first group, known as "Capital Equipment," includes high-value kitchen equipment such as ovens, ice makers, mixer, fryers, and smokers. Each piece of Capital Equipment was individually evaluated by the Appraiser. The second group, termed "Support and Ancillary Items," encompasses a range of supporting items such as shelving, pots, pans, skillets, carts, heat lamps, kitchen utensils,

blenders, mixers, microwaves, processors, racks, customer utensils, plates, cups, bowls, bar and restaurant glasses, mugs, caddies, and other miscellaneous restaurant items.

11. The Appraised Collateral is exclusive of inventory; intellectual property; cash; accounts receivable; and other general intangibles, all of which constitute other collateral of Capital bank. It is also exclusive of any items that constitute Capital Bank's collateral that were documented as being purchased by the Debtor with Capital Bank's loan, but not located on the Debtor's premises at the time of the appraisal.

12. On August 9, 2024, the Debtor filed a Subchapter V Plan of Reorganization [Dkt. 49], wherein Debtor stated that the liquidation value of the Debtor's estate, including presumably the Appraised Collateral, was $108,247.53. (*See* Plan at page 3.) The Debtor further states that "the value of all assets not subject to the Class 1 lien, as of the Petition Date, to be $64,456.85, and, as such, that number to constitute the secured portion of Capital Bank's claim". (*See* Plan at page 7).

### III. THE PLAN IS NOT CONFIRMABLE UNDER THE U.S. BANKRUPTCY CODE

**A. Debtor Fails to Meet its Burden Under 11 U.S.C. § 1129(a).**

13. To confirm a plan of reorganization, a plan proponent must demonstrate that the proposed plan satisfies each of the requirements of Section 1129(a) of the Bankruptcy Code.

14. The plan proponent bears the burden of proof on each element of Section 1129. *E.g.*, *In re Mullins*, 435 B.R. 352, 357 (Bankr. W.D. Va. 2010) ("The burden of proof to establish that a chapter 11 plan satisfies the statutory requirements for confirmation falls on the plan's proponent."); *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000) ("It is well established that it is the debtor's burden to show that the plan meets the statutory criteria.").

15. Even absent the filing of an objection to a Chapter 11 plan, the plan proponent must affirmatively demonstrate that the plan is confirmable, and the Court must determine whether the requirements of § 1129(a), and if applicable § 1129(b), have been met. *See, e.g. In re Rivers End Apartments, Ltd.*, 167 B.R. 470, 475 (Bankr. S.D. Ohio 1994). At this juncture,

Debtor has not proposed a confirmable plan under 11 U.S.C. § 1129(a) for the reasons that follow.

  **B.** **The Plan is Not Confirmable Pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(II) Because the Plan Does Not Include Payments to Capital Bank Totaling the Value of Its Secured Claim.**

  16. § 1129(b)(2)(A)(i)(II) makes clear that in order for a plan to be considered fair and equitable the plan must provide for holders of secured claims to receive payments totaling "at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;"

  17. The Plan is not confirmable in that it does not grant Capital Bank cash payment equaling at least the value of the secured portion of Capital Bank's claim.

  18. The Plan's proposed payments to Capital Bank are based on a valuation of the Debtor's assets that significantly undervalues them. As outlined below, the Debtor's assertion that Capital Bank's secured interest amounts to $64,456.85 directly contradicts the only professional evaluation of the value of those assets, which is the Appraisal. The proposed plan distributions are only approximately forty percent (40%) of the appraised value of the personal property constituting Capital Bank's collateral; and, other general intangibles, cash and other collateral are not included in the Appraisal, thus making clear that the proposed plan distributions run afoul of §1129(b)(2)(A).

  19. The Plan's contemplated payments to Capital Bank are not sufficient under §1129(b)(2)(A)(i)(II) and thus, the Plan is not confirmable.

  **C.** **The Plan is Not Confirmable Pursuant to 11 U.S.C. § 1129(a)(7) Because Creditors are Projected to Receive Less Then They Would Upon the Liquidation of the Debtor.**

  20. The Plan describes Capital Bank as the sole member of Class 2. Capital Bank's claim as a member of Class 2 is impaired. (*See* Plan at page 7). Class 2 represents the portion of the Capital Bank's claim that is secured. Per the Plan the remainder of the debt would be considered part of Class 4 – General unsecured creditors. Under the Plan, Class 4 claims total

$1,145,568.66 [Dkt. 49 at page 6] and disbursements to the Class 4 creditors are scheduled to total $10,000. [Dkt. 49 Exhibit D at page 2].

21. The Plan proposes that Capital Bank will receive payment for the entirety of its claim to the extent that it is categorized as part of Class 2 but will receive payment equaling less than one percent (1%) of its claim to the extent that it is categorized as being part of Class 4. Based on the Appraisal of the collateral, the projected Plan payments are less than what Capital Bank and other creditors would receive if the Debtor liquidated all of its assets.

22. The devaluation of Debtor's assets has the effect of reducing the amount that Capital Bank would receive under the Plan to an amount that is less than the total that Capital Bank would receive under a Chapter 7 liquidation of the Debtor. As this violates § 1129(a)(7)(A)(ii) of the Bankruptcy Code, the Court should not confirm the Plan.

**D. The Plan is Not Confirmable Under 11 U.S.C. § 1129(a)(11) Because Confirmation of the Plan is Likely to be Followed by a Liquidation.**

23. The Court should not confirm the Plan because it is not a feasible reorganization plan and Debtor has not met its burden to show that the Debtor is unlikely to require a liquidation of its assets post-confirmation.

24. Pursuant to § 1129(a)(11), the Court must find that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor [. . .]." 11 U.S.C. § 1129(a)(11).

25. In the Plan, Debtor has not provided any evidence that would tend to show that liquidation is not a likely outcome following the confirmation of the Plan. To the contrary, the Debtor explicitly acknowledges the difficulty of success in the restaurant industry and the uncertainty that the Debtor faces:

> [T]he restaurant business is notoriously difficult, compounded here by rising labor and product costs, and a general decline in consumer "eat-out" spending habits. The projections attached to this Plan are made in good faith and rooted in empirical, historical data points. But these are not guarantees, and even more so than with most businesses, are speculative to a necessary degree. The Debtor is resolved to make best efforts toward a successful reorganization, and believes

> creditors are uniformly aided—not hampered—through such efforts. But the Debtor is also acutely aware that a further spike in costs, or a failure of sales to rise in accord with inflationary measures, could change ink from black to red and invite a return to this Honorable Court.

[Dkt. 49 at page 4].

26. The Debtor has provided no reason for the court to believe that liquidation will not be an inevitable consequence of the confirmation of the plan.

> [I]n determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable. However, when long term payments are contemplated stricter proof of feasibility is required. The Court in scrutinizing the plan should consider (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; and (4) the ability of management. Other factors include the prospective availability of credit and whether the debtor will have the ability to meet its requirements for capital expenditures.

*In re Agawam Creative Mktg. Assocs., Inc.*, 63 B.R. 612, 619-620 (Bankr. D. Mass. 1986) (internal citations omitted).

27. As set forth in the Office of the United States Trustee's objection to the Plan [Dkt. 51], the Debtor's historical performance and projections do not reflect a business that is likely to remain profitable post-confirmation. Capital Bank adopts the United States Trustee's objection in its entirety. The Debtor has failed to provide evidence, including projections, to support a finding that the Plan is feasible.

28. Thus, the Plan is not feasible and is likely to result in a liquidation of the Debtor post-confirmation. The Plan violates § 1129(a)(11) and should not be confirmed.

    **E.    The Plan is Not Confirmable Because It Was Not Proposed in Good Faith Pursuant to 11 U.S.C. § 1129(a)(3).**

29. To confirm a plan of reorganization, a plan proponent must demonstrate that the proposed plan satisfies each of the requirements of Section 1129(a) of the Bankruptcy Code.

30. The Plan violates § 1129(a)(3) because it was not proposed in good faith. One requirement for confirmation of a plan is that the "plan has been proposed in good faith [. . .]." 11 U.S.C. § 1129(a)(3). "Since the Bankruptcy Code does not define the concept of good faith,

the bankruptcy court must inquire into the [plan proponent's] conduct as a whole in determining whether the plan was filed in good faith." *In re Sherwood Square Assocs.*, 107 B.R. 872, 875–76 (Bankr. D. Md. 1989) (Internal citations and quotations omitted).  In determining "good faith," courts view the totality of the circumstances regarding the plan.  *See id*.  Under the caselaw, "'bad faith' -- *i.e.*, an absence of the requisite good faith -- may be found where a claim holder attempts to extract or extort a personal advantage not available to other creditors in the class, or, [. . .] where a creditor acts in furtherance of an ulterior motive, unrelated to its claim or its interests as a creditor." *In re DBSD N. Am., Inc.*, 421 B.R. 133, 138; *see In re Federal Support Co.*, 859 F.2d 17, 19 (4th Cir. 1988) (explaining that a creditor does not act in good faith where it casts its vote for an ulterior purpose).

31. The Plan was not proposed in good faith but was rather filed in order to minimize Capital Bank's secured collateral in order to disadvantage Capital Bank.

32. As discussed above, Capital Bank possesses a lien on all of the Debtor's assets including, but not limited to, the Debtor's equipment, fixtures, inventory, all assets of the Debtor post-petition, any cash from pre-petition credit card receipts or other accounts receivable post-petition any cash from pre-petition credit card receipts or other accounts receivable.  This collateral includes the entirety of machinery and equipment owned by the Debtor.

33. As described above, the Appraiser issued a valuation of the physical personal property constituting the Appraised Collateral that is owned by the Debtor and located on the premises.  The appraised fair market value of the Appraised Collateral is $158,420.00 as of July 18, 2024.  Thus, the amount proposed to be paid to Capital Bank is roughly **forty percent of the appraised value of the personal property alone**, and not including inventory, cash, general intangibles, and other collateral securing Capital Bank's claim.

34. In the Plan the Debtor states that, "Smokecraft [] scheduled $33,871.50 in kitchen equipment." This valuation, based on the Debtor's pre-petition due diligence, represents an already-depreciated assessment of the assets, premised upon what would be fetched at liquidation." (Plan at page 3).

35. Clearly, Debtor's $33,871.50 unsubstantiated valuation of the entirety of its "kitchen equipment" is completely incompatible with the professional Appraiser's $158,420.00 valuation of a portion of said equipment.

36. There can be no good faith justification for Debtor's decision to value its assets at less then a quarter of its actual appraised value.

37. Given that Capital Bank provided the Debtor with a copy of the Appraisal, and yet the Debtor continues to seek confirmation of a Plan that undervalues its own property without justification, the Court should find that the Debtor filed the Plan with an ulterior motive to unfairly devalue Capital Banks secured collateral and to deny creditors of their protections under §1129 and 1123. This behavior is prohibited by § 1129(a)(3) of the Bankruptcy Code, and accordingly the Court should not confirm the Plan.

## IV. CONCLUSION

38. For the foregoing reasons, Capital Bank respectfully requests that the Court deny confirmation of the Debtor's Plan and grant such other and further relief as the Court deems just and appropriate.

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin, 28257
Corinne Donohue Adams, 18768
John Rott, 22129
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com; cadams@yvslaw.com; jrott@yvslaw.com

Counsel for Capital Bank N.A.

4869-6534-9350, v. 1

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 18th day of September 2024, notice of filing Capital Bank's Objection to Debtor's Chapter 11, Subchapter V Plan was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

              */s/ Catherine Keller Hopkin*
              Catherine Keller Hopkin

**The following parties received
CM/ECF notice of the filing:**

Catherine Keller Hopkin, Esquire
(chopkin@yvslaw.com)
Counsel for Capital Bank N.A.
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401

Lynn A. Kohen, Esquire
(lynn.a.kohen@usdoj.gov)
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland  20770

L. Jeanette Rice, Esquire
(jeanette.rice@usdoj.gov)
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland  20770

Angela L. Shortall, Subchapter V Trustee
(ashortall@3cubed-as.com)
111 South Calvert Street, Suite 1400
Baltimore, Maryland  21202

U.S. Trustee – Greenbelt
(ustpregion04.gb.ecf@usdoj.gov)
6305 Ivy Lane, Suite 600
Greenbelt, Maryland  20770

Maurice Belmont VerStandig, Esquire
(mac@mbvesq.com)
Counsel for Debtor
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland  20854

**The following parties received notice
of the filing by first-class mail:**

Uline
12575 Uline Drive
Pleasant Prairie, WI 53158

Smokecraft Clarendon, LLC
7104 Loch Lomond Drive
Bethesda, MD 20817