**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In re: | |
| **SMOKECRAFT CLARENDON, LLC** | **Case No. 24-13609-MCR** |
| **Debtor.** | **(Chapter 11 – Subchapter V)** |

**UNITED STATES TRUSTEE'S OBJECTION**
**TO DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN**

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "United States Trustee"), by counsel, hereby files this objection to Smokecraft Clarendon, LLC's First Amended Subchapter V Plan of Reorganization ("Amended Plan") because the plan is not fair and equitable.

According to 11 U.S.C. § 1191(a), the Court shall confirm a plan if all the requirements of section 1129(a) are met, except subparagraph (15). If all the applicable requirements of section 1129(a) are met, other than paragraph (8), (10) and (15), are met, then the Court should confirm a plan if the plan does not discriminate unfairly and is fair and equitable. The burden is on the Debtor to prove that the plan is fair and equitable. *In re Trinity Family Practice & Urgent Care PLLC*, 661 B.R. 793, 809 (Bankr. W.D. Tex. 2024).

In the first Plan, Dkt. 46, the Debtor proposed to pay all unsecured creditors, which were lumped into one class, a meager 1.1%. The United States Trustee believed that the Debtor's projections were faulty and filed an objection setting the basis of his belief. The Debtor requested and received additional time to file an Amended Plan, which the United States Trustee had hoped would result in an increase distribution to creditors. Unfortunately, the Debtor misused the opportunity and filed the Amended Plan, which broke the unsecured creditors in two

groups: (1) a small group of what the Debtor considers to be "critical vendors," which will be paid 100% ($13,669.20) over the life of the plan, beginning in the May 2027; and (2) a much larger group of the remaining "non-critical" unsecured creditors (over $1 million) to which the Debtor proposes to pay absolutely nothing. The United States Trustee has not seen a plan confirmed where the vast majority of unsecured creditors receive nothing (and the principal of the Debtor keeps everything). That, it and of itself, seems to be unfair and inequitable.

There are two primary issues that the Court needs to address before it can confirm the Amended Plan: (1) whether there is a business justification for the Debtor to break the unsecured creditors into two classes; and (2) whether it is fair and equitable for the Debtor to pay nothing to most of its unsecured creditors.

I.     The Debtor has no legitimate business reason to break the unsecured creditors into two classes.

One of the primary goals of the Bankruptcy Reform Act of 1978 was the equality of treatment among creditors." *See In re Shines*, 39 B.R. 879 (Bankr. E.D. Va. 1984) (citing House Rep. No. 95–595, 95th Cong., 1st Sess. 340–42 (1977); U.S. Code Cong. & Admin. News 1978, pp. 5787, 5963, 6296–6298; Senate Rep. No. 95–989, 95th Cong.2d Sess. 49–51 (1978) U.S. Code Cong. & Admin. News 1978, pp. 5787, 5835–5837); *see also In re United American, Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) ("The Doctrine of Necessity is an equitable doctrine that endeavors to reconcile two otherwise irreconcilable objectives of chapter 11: the reorganization of otherwise viable entities that have fallen upon hard times into profitable entities and thereby pay pre-petition creditors and preserve jobs; and, at the same time, the equal treatment of all creditors."). "[T]he most basic bankruptcy policy is the equal treatment of creditors." *In re Southern Star Foods, Inc.*, 201 B.R. 291, 293 (Bankr. E.D. Ok 1996); *see also In re Delta Air Lines*, 359 B.R. 454, 459 (Bankr. S.D.N.Y. 2006) ("The

automatic stay is crucial for the benefit and protection of creditors and the central bankruptcy objective of equal treatment of creditors.").

According to the Fourth Circuit, although Section 1122 of the Bankruptcy Code does not require that that all substantially similar claims be placed within the same class, there is a limit on the debtor's power to classify claims. *In re Bryson Properties XVIII*, 961 F.2d 496, 502 (4th Cir. 1992).

> Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, this discretion is not unlimited. There must be some limit on the debtor's power to classify creditors. . . . The potential for abuse would be significant otherwise. . . . If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed.

*Id.* (citing *In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir.1990) (citations omitted)).

In this case, the Debtor alleges that certain of its unsecured creditors are "critical" and thus places those unsecured creditors in a separate class, Class 4, with the remaining unsecured creditors in Class 5. The Debtor proposes to pay Class 4 in full (100%), whose claims total $13,669.20, beginning in May 2027 with the last payment in August 2028. In contract, the Debtor proposes to pay Class 5 nothing (0%), whose claims total over $1 million. At the confirmation hearing, the Debtor must prove that there is a business justification for dividing the unsecured creditors into Class 4 and Class 5. The Debtor alleges in the Amended Plan that the creditors in Class 4 are "critical vendors" in that the Debtor will not be able to profitably operate on a go-forward basis without those creditors. The Debtor states that it must pay the Class 4 creditors in full, or those creditors will no longer deliver goods or services to the Debtor. Even if true, the Debtor forgot to mention two other important factors that it must satisfy before the Court can consider these unsecured creditors to be "critical vendors": (1) that the creditors in

Class 4 will not accept an alternative to payment in full under the Plan (maybe the creditors in Class 4 would be satisfied with a personal guaranty of the owner or security on collateral owned by the owner); and (2) that the payment to these Class 4 creditors shows the "prospect of benefit to the other creditors." Preferential payments to "critical vendors" are only allowed if the record shows the prospect of benefit to the other creditors. *In re Kmart Corp*. 359 F.3d 866, 874 (7th Cir. 2004) ("Even if § 362(b)(1) allows critical-vendors orders in principle, preferential payments to a class of creditors are proper only if the record shows the prospect of benefit to the other creditors."); *In re CEI Roofing, Inc*., 315 B.R. 50 (Bankr. N.D. Texas 2004) (Critical vendor order did not stand because there was no showing of the prospect of benefit to the other creditors.).[1]

In this case, the other unsecured creditors in Class 5 are receiving no payment if Class 4 payments are paid pursuant to the Plan. If there was no Class 4, then presumably the funds set aside for Class 4 would be used to pay Class 5. Even if the Debtor can meet the other factors for designating certain unsecured creditors as critical vendor, it cannot meet the last factor – the prospect of benefit to the other unsecured benefits as they receive nothing if the critical vendors are paid in full.

---

[1] In *Czyewski v. Jevic Holding Corp*. 580 U.S. 451 (217), the Supreme Court held that bankruptcy courts may not approve non-consensual structured dismissals that vary the priority scheme established by the Code. *Id.* at 983–84. In reaching this conclusion, the Supreme Court distinguished critical vendor orders from structured dismissals on the ground that unlike the former, the latter served no "significant offsetting bankruptcy-related justification." *Id.* at 986. "It does not preserve the debtor as a going concern; it does not make the disfavored creditors better off; it does not promote the possibility of a confirmable plan; it does not help to restore the *status quo ante*; and it does not protect reliance interests." *Id.* at 977 (Emphasis Added.). Jevic suggests that "Kmart's restrictive view of critical vendor payments is the correct approach." *In re Pioneer Health Services, Inc*., 570 B.R. 228, 235 (Bankr. S.D. Miss. 2017).

It appears that the Debtor is engaging in gerrymandering to segregate the claim of Capital One, which is the largest unsecured creditor that will control the unsecured class. The Debtor determined that the unsecured creditors in Class 4 were critical only after it was unable to obtain Capital One's consent to the Plan. If these unsecured creditors in Class 4 were truly critical, why did the Debtor not file a motion to pay these critical vendors pre-confirmation? Moreover, the Plan proposes to begin payments to Class 4 in May 2027, which will be more than two years after the Effective Date of the Plan. The timing of the designation along with the timing of the payments makes it appear that the Debtor is more concerned about gerrymandering than paying creditors.

II.     It is not fair and equitable for the Debtor pay nothing to general unsecured creditors.

As previously stated, the Debtor proposes to pay nothing (0%) to the Class 5 unsecured creditors. It is indisputable that a 0% distribution is not a meaningful distribution to creditors. Although the Fourth Circuit had held that a substantial repayment is not required, at least in the Chapter 13 context, it also found that "Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting to honestly to repay his debts." *In re Deans*, 692, F.2d 968, 972 (4th Cir. 1982). The prospect of a meaningful distribution is one factor to be considered in deciding whether a plan has been proposed in good faith. *Id.* In a recent case in the Eastern District of Virgnia, where this Debtor operates, the Court found that a distribution of 1.5% over 5 years was not a reason to keep the case in Chapter 11, Subchapter V. *In re Hao*, 644 B.R. 339, 348 (Bankr. E.D. Va. 2022); *In re Bennett, Remick & Bennett*, 84 B.R. 182 (Bankr. D. Mont. 1988) (case dismissed because there was no meaningful rehabilitation for benefit of creditors); *see also In re Brinkley,* 505 B.R. 207 (Bankr. E.D. Mich. 2013) (Court refused to confirm a Chapter 13 Plan that proposed no payment

to unsecured creditors when debtor attempted to retain an underwater investment property); *In re Broder*, 607 B.R. 774 (Bankr. D. Maine 2019) (Chapter 13 debtor's retention of luxury boat while paying unsecured creditors a 14% distribution prevented court from confirming the plan).

To add insult to injury, the Debtor limited the duration of its Plan to 4.5 years. If the Debtor extended the Plan another 6 months (for a total of 5 years), then the Debtor should have sufficient income to make a distribution to Class 5. The fact that the Debtor truncated its Plan to 4.5 years if further evidence that the Plan was not filed in good faith and is neither fair nor equitable.

III.    The Debtor's liquidation analysis is flawed.

On page 4 of the Plan, the Debtor states that if the Debtor were liquidated, there would be a net distribution to unsecured creditors in the amount of $85,370.48. The Liquidation Analysis attached as Dkt. 72-1, however, states that the net distribution to creditors in the event of liquidation would be $103,811.03. Both values are misleading. Because of Capital One's lien, the only assets available for distribution to unsecured creditors are the cash and cash equivalents valued at $69,073.70, food and beverages valued at $5,302.23, and a professional negligence claim valued at $0. Upon liquidation, unsecured creditors would receive $74,375.93. The Plan, however, proposed to pay only $13,699.20 to Class 4 (over a two-year period beginning in May 2027) and $0 to Class 5. In addition, the liquidation analysis contained in the Plan does not account for potential preferences, which there appears to be a $65,000 preference paid to insiders. The hard truth is that the creditors would fare better in a liquidation than under the Plan.

IV.     Miscellaneous.

Class 3 consists of Andrew Darneille and The Chef's Warehouse Mid-Atlantic, LLC. The Debtor states that it plans to object to the claim of The Chef's Warehouse Mid-Atlantic, LLC. The Debtor states on page 9 of the Amended Disclosure Statement that if its objection to the claim of The Chef's Warehouse Mid-Atlantic, LLC, is sustained, the amount that could otherwise have gone to it will be paid to Class 4. Class 4, however, which is comprised of the "critical vendors" is already being paid in full. As such, the payments that would have been made to The Chef's Warehouse Mid-Atlantic, LLC, should go to Class 5 if the Debtor's objection is sustained. Similarly, Section 3.02 states that any surplus funds shall be paid to Class 4; they should be paid to Class 5.

Section 3.02 also states that the Debtor is "cautiously optimistic" that the administrative creditors will agree to pe paid over-time *pari passu* with Debtor's counsel. The question that must be asked is whether the Plan is feasible if the administrative creditors demand to be paid as of the Effective Date as required by Section 1129((a)(9). Moreover, the budget, Dkt. 72-4, provides for a total payment of administrative creditors to be $28,000. Nowhere in the Disclosure Statement is that value supported. Moreover, the Debtor's first plan also called for the payment of administrative creditors to be paid $28,000, and that plan was filed almost 5 months ago, with both the Debtor's counsel and the Subchapter V Trustee performing work in these past 5 months. One would think that the administrative creditors fees would have increased over these last 5 months. Moreover, given the Debtor's lackluster financial performance while in bankruptcy, there is no assurance that the Subchapter V Trustee will be paid overtime. There is absolutely no incentive for the Subchapter V Trustee to wait to be paid – she will most likely suffer the same fate as the Class 5 claimants.

If there the Debtor does not experience a dramatic boost in its financials and amend its Plan to pay creditors at least what they would get upon liquidation, the United States Trustee will most likely file a motion to dismiss or convert the case.

WHEREFORE, the United States Trustee requests that the Plan be denied and for such other and further relief as the nature of his cause may require.

Date:   December 11, 2024          **GERARD R. VETTER**
                                   Acting United States Trustee for Region 4

                                   By Counsel:

                                   */s/ Lynn A. Kohen*
                                   Lynn A. Kohen
                                   Trial Attorney
                                   6305 Ivy Lane, Suite 600
                                   Greenbelt, MD  20770
                                   (301) 344-6216
                                   Fax: (301)-344-8431
                                   E-mail: Lynn.A.Kohen@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of December 2024, a copy of the Objection to the Debtor's Chapter 11, Subchapter V Plan was served by ECF notification upon the following:

- **Catherine Keller Hopkin**   chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- **Lynn A. Kohen**   lynn.a.kohen@usdoj.gov
- **L. Jeanette Rice**   Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Angela L. Shortall**   ashortall@3cubed-as.com, md70@ecfcbis.com
- **US Trustee - Greenbelt**   USTPRegion04.GB.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

And by first-class mail, postage prepaid to:

**Uline**
12575 Uline Drive
Pleasant Prairie, WI 53158

**Smokecraft Clarendon, LLC**
7104 Loch Lomond Drive
Bethesda, MD 20817

*/s/ Lynn A. Kohen*
Lynn A. Kohen