IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
**Greenbelt Division**

In re                                                          Case No. 24-13609-MCR

Smokecraft Clarendon, LLC                          Chapter 11

     Debtor.
_____/

**MOTION TO VALUE SECURED CLAIM
OF CAPITAL BANK, NATIONAL ASSOCIATION**

     Comes now Smokecraft Clarendon, LLC ("Smokecraft" or the "Debtor"), by and through undersigned counsel, pursuant to Section 506 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 3012(a), and moves to value the secured claim of Capital Bank, National Association ("Capital Bank"), and in support thereof states as follows:

    **I.**    **Introduction**

     As is likely now familiar to this Honorable Court, there exists some import in valuing the collateral of Capital Bank for purposes of assessing the scope, *vel non*, of the bank's secured claim in this case. The Debtor—like almost every small business to avail itself of Subchapter V—has a finite volume of projected disposal income to be paid to creditors during the life of a plan; ascertaining the size of Capital Bank's secured claim—and, by extension, the funds that must be paid to the financial institution under a plan, should the creditor persist in objecting to confirmation—is accordingly critical to reorganization *sub judice*. Such will not merely permit Smokecraft a clear path to emergence from bankruptcy but, too, will well define the total recovery that may be occasioned by unsecured creditors herein.

1

As extrapolated upon *infra*, that secured claim is comprised of two components: (i) tangible personal property; and (ii) cash collateral. The latter figure is calculable with some ease, with Capital Bank having suggested the number to be $17,630.00 as of the April 29, 2024 petition date (the "Petition Date"), DE #36, and with $13,500.00 in adequate protection payments having been made during the life of this case, abating that sum by consent and bringing the present figure to $4,130.00. The former figure, as evidenced by the most recent hearing in this case, is a topic of greater dispute.

Smokecraft has obtained an appraisal of the fair market value of all tangible personal property believed to be the collateral of Capital Bank, with a cumulative valuation of $75,365.00. This valuation excludes fixtures, which the Debtor contends to not be subject to the bank's lien, but includes all other personal property of Smokecraft. Combined with the aforementioned cash collateral, the figure brings the bank's total secured claim to $92,995.00 (part of which has already been paid, post-petition, pursuant to the various cash collateral orders in this case). And Smokecraft thusly asks this Honorable Court to value the secured claim of Capital Bank, as of the present date, at $92,995.00, of which $13,500.00 has been repaid post-petition, leaving a net remaining secured claim of $79,495.00.

**II.     Standard**

As noted by the Supreme Court: "Section 506(a) provides that an allowed claim secured by a lien on the debtor's property 'is a secured claim to the extent of the value of [the] property'; to the extent the claim exceeds the value of the property, it 'is an unsecured claim.'" *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328 (1993) (quoting 11 U.S.C. § 506(a)). This regime, in turn, invites

a prism in which parties are ". . . correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.*

Specifically, "[s]ubsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters*., 489 U.S. 235, 239 (1989). *See also Woolsey v. Citibank, N.A. (In re Woolsey)*, 696 F.3d 1266, 1272 (10th Cir. 2012).

Procedurally, this mechanism is memorialized in the Federal Rules of Bankruptcy Procedure which allow, *inter alia*, "[o]n a party in interest's request, after notice and a hearing, the court may determine the amount of a secured claim under § 506(a). . ." Fed. R. Bankr. P. 3012(a).

**III.     Argument: Cash Collateral Should be Valued at $4,130.00**

As intimated above, the cash collateral portion of Capital Bank's claim in this case is perhaps the easiest to address. The bank asserted, in a consent motion filed in June 2024, that it held a lien against $17,630.00 in cash collateral. *See* Consent Motion, DE #36, at ¶ 14. While the Debtor does take issue with this figure, and believes the number to be artificially high, the scope of disagreement is sufficiently minimal that Smokecraft cannot justify expending legal fees refuting the contention. So the $17,630.00 number may be accepted as the Petition Date sum, for purposes of this motion.

Smokecraft has paid $1,500.00 per month, to Capital Bank, as and for the use of cash collateral, for the life of this case, *except* no payment was made (or ordered to be paid) for the month of April 2024. As of the filing of this motion, such equates to nine payments, totaling $13,500.00. Those payments have been applied to the bank's secured claim, DE #44 at ¶ 5, thereby lessening the secured claim. And the remaining secured claim of Capital Bank, pegged to cash collateral, thusly stands at $4,130.00 as of present.

### IV. Argument: The Lien on Personal Property Should be Valued at $75,365.00

Two questions ultimately govern the assessment of Capital Bank's secured claim derivative of the Debtor's non-cash assets: (i) the value of those assets; and (ii) whether or not fixtures ought to be included in those assets.[1] The value is a question of fact that can be discerned at an evidentiary hearing. Smokecraft has enormous confidence in its appraiser, William J. Fischer, CAI GPPA, who, using a fair market valuation standard, has pegged the at-issue sum at $75,365.00. A copy of the appraisal, showing valuations on an item-by-item basis, is attached hereto as Exhibit A.

Mr. Fischer's appraisal notes various items to be fixtures and values each such item at $0.00 as a "leasehold item." This is because, as addressed in previous briefing in this case, fixtures are not assets of the Debtor under Virginia law (which is the legal scheme that governs a restaurant in Arlington County) and Capital Bank has openly acknowledged as much through a tri-party agreement with the Debtor and its landlord.

Under Virginia law, a three prong test is utilized to determine whether or not a chattel constitutes a fixture:

> (1) annexation of the chattel to the realty, actual or constructive; (2) its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) the intention of the owner of the chattel to make it a permanent addition to the freehold.

*In re Alterman*, 127 B.R. 356, 361 (Bankr. E.D. Va. 1991) (citing *Danville Holding Corp. v. Clement*, 16 S.E.2d 345, 349 (Va. 1941)). Critically, however, "[a]lthough it is ostensibly a three-part or three-step test, in essence the test applied by most courts, including the Supreme Court of Virginia, is whether the party annexing the chattel to the realty intended to permanently improve

---

[1] The Debtor is aware that Capital Bank also suggests there to be "missing" equipment upon which a lien is held. This contention is demonstrably counterfactual; should Capital Bank endeavor to raise this argument at a hearing on the instant motion, the Debtor is confident the record will reveal the fallacy of the contention.

4

such realty." *In re Shelton*, 35 B.R. 505, 509 (Bankr. E.D. Va. 1983). And, "[i]n the law relating to fixtures, actual annexation includes every movement by which a chattel is joined or united to the property; constructive annexation is the union of such things as have been holden parcel of the realty, but which are not actually annexed, fixed, or fastened to the property." *Id.* (quoting Black's Law Dictionary, 81 (5th ed. 1979)).

A hearing on this motion will reveal the personal property listed as "leasehold items" in Mr. Fischer's appraisal to universally constitute fixtures. Each such item is physically annexed to the realty leased by Smokecraft. Each such item (along many others) has been adopted to the use of the space as a restaurant—a use that would almost-assuredly persist, based on the size and nature of the space, even if Smokecraft were to cease operations. And it is clear all parties intend the fixtures to become a permanent part of the space, as evidenced by the aforementioned tri-party agreement that provides, *inter alia*:

> Notwithstanding anything herein to the contrary, in no event shall the following be deemed part of the Collateral: (a) property attached to or built into the Premises so as to become a fixture under applicable Law or a part of the Premises, (b) any Tenant Improvements or Alterations, and (c) any personal property owned by Landlord and located in the Premises.

Subordination Agreement, attached hereto as Exhibit B, at § 2.

To be sure, Capital Bank has previously intimated certain arguments pegged to the right of the landlord, in its sole and absolute discretion, to ask Smokecraft to remove fixtures upon termination of the lease. But such is a choice that belongs solely to the landlord, not to Smokecraft (or Capital Bank), and one that, by definition, cannot be made until such a time as the lease terminates. The fact that a landlord *may* ask for a fixture to be removed does not render an item any less a fixture; such merely vests a landlord with a discretionary abandonment election that springs only upon the occurrence of a future event.

Moreover, as briefly addressed at the last hearing in this case, there is every reason to believe the Debtor's landlord will *not* avail itself of the contractual right to ask fixtures be removed upon lease termination. Smokecraft's predecessor tenant was, too, a restaurant and, as testified to by Smokecraft's principal, the landlord arranged for that tenant's fixtures to stay behind, giving the building's then-new tenant—the Debtor in this case—the option of using the subject fixtures or monetizing them to help with startup costs.

It is accordingly respectfully urged the personal property subject to Capital Bank's lien be valued at $75,365.00, giving the bank a cumulative secured claim of $92,995.00.

### V.    Conclusion

WHEREFORE, Smokecraft respectfully prays this Honorable Court (i) value the secured claim of Capital Bank at $92,995.00; and (ii) afford such other and further relief as may be just and proper.

    Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Counsel for the Debtor*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of February, 2025, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Corinne Donohue Adams    cadams@yvslaw.com, cadams@yvslaw.com;jbeckman@yvslaw.com;pgomez@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;r39990@notify.bestcase.com
- Catherine Keller Hopkin    chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- Lynn A. Kohen    lynn.a.kohen@usdoj.gov
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- Angela L. Shortall    ashortall@3cubed-as.com, md70@ecfcbis.com
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

               /s/ Maurice B. VerStandig
               Maurice B. VerStandig, Esq.