## SUBORDINATION OF LIEN AGREEMENT

**THIS SUBORDINATION OF LIEN AGREEMENT** (this "Agreement") is entered into this ___ day of July, 2019, by and between KBSIII 3003 WASHINGTON, LLC, a Delaware limited liability company ("Landlord"), and SMOKECRAFT CLARENDON, LLC, a Virginia limited liability company ("Tenant"), and CAPITAL BANK, N.A. ("Lender").

### RECITALS

**A.**     Landlord is the owner of the Building having a street address of 3003 Washington Boulevard, Arlington, Virginia 22201 (also known as 1051 North Highland Street, Arlington, Virginia 22201) (the "Building").

**B.**     Landlord currently leases a portion of the Building, containing approximately 3,460 rentable square feet of space (the "Premises"), to Tenant pursuant to that certain Deed of Lease dated May 22, 2019 (the "Lease").

**C.**     Lender is currently extending, or is about to extend, credit ("Loan") to the Tenant secured by a security interest in certain property of the Tenant to be located in the Premises (the "Collateral").

**D.**     Tenant and Lender have asked Landlord to subordinate its statutory and contractual lien rights in and to the Collateral to Lender, and Landlord has agreed thereto, subject to the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration and of the mutual agreements hereinafter set forth, it is hereby mutually agreed as follows:

1.     The foregoing recitals are hereby incorporated in this Agreement and made a part hereof by this reference. Capitalized terms used but not defined in this Agreement shall have the meanings ascribed thereto in the Lease.

2.     Subject to the terms and conditions set forth in this Agreement, Landlord hereby subordinates its lien rights in and to the Collateral to Lender's lien on the Collateral pursuant to its security interest in the Collateral. Notwithstanding anything herein to the contrary, in no event shall the following be deemed part of the Collateral: (a) property attached to or built into the Premises so as to become a fixture under applicable law or a part of the Premises, (b) any Tenant Improvements or Alterations, and (c) any personal property owned by Landlord and located in the Premises.

3.     Promptly after the declaration of a default which remains uncured by Tenant under the credit and/or security agreement securing the Collateral and subject to the terms and conditions of this Agreement, Lender shall promptly notify Landlord in writing if Lender intends to enter upon the Premises to remove the Collateral. Should Lender desire to enter upon the Premises and remove the Collateral located therein, it shall notify Landlord in writing and arrange for a mutually-agreeable date and time for such entry by Lender or its agent and a representative of Landlord shall be present to supervise the removal of the Collateral. Lender may not enter the Premises for purposes of the removal of the Collateral without the prior written approval of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed, and any entry by Lender upon the Premises shall be on such date(s) and time(s) as selected by Landlord in Landlord's reasonable discretion. Lender shall remove such of the Collateral as desired by Lender from and vacate the Premises within thirty (30) calendar days after the date upon which Lender first enters upon the Premises, time being of the essence, and any Collateral thereafter remaining in the Premises shall be deemed to have been abandoned by Lender, whereupon Landlord may remove and dispose of the Collateral in such manner as Landlord sees fit in its discretion, without any obligation or liability whatsoever to Lender, including without limitation, the obligation to apply the proceeds of any sale of the Collateral to the reduction of any amount then owing to Lender by Tenant. The contrary notwithstanding, Lender shall have no obligation to remove any or all of the Collateral from the Premises.

4.     Lender and Tenant shall be jointly and severally liable to Landlord for any damages to the Building, including without limitation the Premises or any improvements thereto, caused by Lender in connection with any removal of the Collateral and shall promptly reimburse Landlord for any and all reasonable costs and expenses actually incurred by Landlord in connection with repairing any such damage.

5.     To the extent not paid or prepaid by Tenant, Lender shall pay Landlord a reasonable sum for the use and occupancy of the Premises (which sum shall be based on the applicable rent set forth in the Lease) from the date on which Lender first enters the Premises to remove the Collateral until the date Lender has removed the Collateral from the Premises and vacates the Building.

6.     Prior to entering the Premises, and as a condition to Landlord's approval of any entry into the Premises by same, Lender's contractors, if any, shall provide Landlord with a certificate(s) of insurance evidencing liability insurance and property insurance providing coverage for such contractor's entry upon the Premises (for the avoidance of any doubt, Lender shall not itself be

1

required to provide certificates of insurance prior to entry by Lender or its employees into the Premises). Such insurance shall name Landlord as an additional insured and shall be in the amounts and subject to the same terms and conditions of the Lease regarding the insurance to be carried by Tenant. Landlord and its agents, officers, directors and employees (collectively, "Landlord Parties") assume no liability or responsibility whatsoever with respect to the Collateral and shall not be liable to Lender for any damages or claims arising out of or related to the Collateral or Lender's removal of same from the Premises or the actions or inactions of any person other than Landlord or a Landlord Party. Lender and Tenant, jointly and severally, agree to reimburse Landlord for and indemnify, defend and hold harmless Landlord and Landlord Parties from and against any and all cost, damage, claim, liability or expense (including without limitation, reasonable attorney's fees) incurred by Landlord or any Landlord Parties, directly or indirectly, as a result of or in any way arising from Lender's exercise of its rights under this Agreement, including without limitation, any entry upon the Premises by Lender.

7.    Notwithstanding anything to the contrary contained herein, in the event that Landlord notifies Lender in writing (a "Landlord Termination Notice") that Landlord is terminating the Lease as a result of a default by Tenant thereunder, Lender shall have five (5) business days from Lender's receipt of the Landlord Termination Notice to notify Landlord in writing of Lender's desire to enter the Premises to remove the Collateral in accordance with the terms and conditions of this Agreement. The foregoing notice to Landlord shall include the date on which Lender desires to enter the Premises to remove the Collateral, which date shall be no later than thirty (30) calendar days after Lender's receipt of the Landlord Termination Notice, unless otherwise approved in writing by Landlord. If Lender fails to timely notify Landlord of its desire to remove the Collateral or, following any such notice, fails to remove the Collateral within the time limits set forth herein, Lender shall be deemed to have abandoned the Collateral and forfeited all of its rights under this Agreement, whereupon Landlord may remove and dispose of the Collateral in such manner as Landlord sees fit in its discretion, without any obligation or liability whatsoever to Lender, including without limitation, the obligation to apply the proceeds of any sale of the Collateral to the reduction of any amount then owing to Lender by Tenant. The contrary notwithstanding, Landlord shall notify Lender in writing of any default by Tenant under the provisions of the Lease, and following receipt of such notice, Lender shall have the right (but is not obligated) to cure such default within the applicable notice and cure period, if any, allotted to Tenant under the Lease. Notwithstanding the foregoing to the contrary, with respect to any monetary default by Tenant with respect to which Tenant is entitled to a five (5) day notice and cure period in accordance with item (i) in Section 16.a of the Lease, Lender shall have the right to cure such default within ten (10) days after receiving written notice thereof, which notice may be given by Landlord simultaneously with the delivery of written notice of the same to Tenant.

8.    Tenant shall reimburse Landlord, within ten (10) days following Landlord's written demand, for all reasonable costs and expenses incurred by Landlord in connection with Tenant's request for this Agreement and the subordination of lien contemplated hereby, including without limitation, all reasonable legal costs and expenses incurred in connection with the preparation, review and/or negotiation of this Agreement.

9.    Tenant represents, warrants, and covenants to Landlord and Lender that (a) the Lease described in the recitals of this Agreement is in full force and effect and has not been modified, altered, or amended; and (b) there are no defaults by Landlord under the Lease and there is no defense, claim, or right of set-off whatsoever existing for the benefit of Tenant as of the date hereof to the obligations evidenced by the Lease.

10.    SBA Provisions. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a.    When SBA is the holder of the Note, this document and all documents evidencing or securing the Loan will be construed in accordance with federal law solely with respect to any dispute between Lender and Tenant.

b.    Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. Neither Tenant nor any Guarantor may claim or assert against SBA any local or state law to deny any obligation of Tenant, or defeat any claim of SBA with respect to the Loan.

c.    As security for the Loan and the performance of all of Tenant's obligations to Lender arising from the Loan, including without limitation the payment of all fees, charges, assessments, costs, and expenses provided for in the documents and agreements evidencing securing or otherwise executed in connection with the Loan, and the performance of all the terms and conditions of the SBA Authorization issued in connection the Loan (collectively, "Obligations"), Tenant hereby grants, transfers and assigns to Lender all of its right, title and interest in and to the Lease and the Premises. Lender may, by written notice to Landlord given no later than fifteen (15) days following notice of a default by Tenant, assign all of its rights under this Agreement and the Lease to a Qualified Replacement Tenant (as hereinafter defined) after a default under any of the Obligations, and shall have the right and power at its option after such default to sell, assign and transfer the entire lessees' interest in the Lease to any Qualified Replacement Tenant reasonably acceptable to Landlord, and, subject to the terms and conditions set forth in Section 7.c of the Lease, Lender shall retain all of the proceeds of such sale, assignment or transfer to be applied to the repayment of the Obligations, and Tenant hereby irrevocably appoints

Lender, or any officer of Lender, as Tenant's true and lawful attorney in fact, with full power of substitution, for the purpose of implementing the foregoing. Such a further assignment, sale or other transfer by Lender shall divest Tenant of all of its right, title, and interest in the Lease and transfer the same to the Qualified Replacement Tenant as the new tenant, which shall have and be vested, absolutely, with all of the right, title and interest of Tenant in and to the Lease. The foregoing notwithstanding, so long as Tenant has not defaulted in connection with the Obligations, Tenant shall have the right to enjoy all of the rights, title and benefits of the Lease. Nothing herein contained shall be construed to alter or modify the obligations of Tenant to Landlord pursuant to the terms of the Lease and, notwithstanding anything herein to the contrary, Landlord shall continue to deal directly with Tenant regarding administration and enforcement of the Lease and shall not have any obligation to provide notices or to otherwise engage Lender in connection therewith except with respect to the notice and cure rights of Lender which are expressly set forth in this Agreement. For the purposes hereof, a "Qualified Replacement Tenant" shall mean a replacement tenant selected by Lender and reasonably approved by Landlord, which replacement tenant intends to and does operate in the Premises a food and beverage operation substantially similar to the operation of Tenant which complies with the Permitted Use (as defined in the Lease). Any such Qualified Replacement Tenant shall be open and operating in the Premises no later than two (2) months following Lender's delivery of notice to Landlord that it has elected to have such Qualified Replacement Tenant assume Tenant's interest in the Lease in accordance with this paragraph. In the event any Qualified Replacement Tenant fails to open for business in the Premises, in accordance with the Permitted Use and the terms and conditions hereof, within the aforementioned two (2) month period, then the assignment or sublease to the Qualified Replacement Tenant shall be null and void and Landlord shall, notwithstanding anything in this Agreement to the contrary, have the right to immediately terminate the Lease and re-enter the Premises without any further obligation to Lender or such Qualified Replacement Tenant. Landlord hereby consents to the foregoing.

        d.      Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

        SBA PROVISIONS (APPLICABLE ONLY TO LENDER AND TENANT). The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

        (a)      When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

        (b)      Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

        11.      Any and all notices or demands required or permitted under this Agreement shall be in writing and served (i) personally, (ii) by certified mail, return receipt requested, or (iii) by guaranteed overnight courier, at the addresses set forth below:

          **If to Landlord:**

          KBSIII 3003 Washington, LLC
          c/o KBS
          3003 Washington Blvd., Suite 950
          Arlington, VA 22201
          Attention: Stephen J. Close

          **If to Lender:**

          Capital Bank, National Association
          1776 Eye Street, NW
          Washington, DC 20006
          Attention: Chris Mullings, Senior Vice President

With copies to:

Bryan J. Pelino
Rosenberg Pelino LLC
6031 University Boulevard, Suite 300
Ellicott City, Maryland 21043

**If to Tenant:**

Smokecraft Clarendon, LLC
7104 Loch Lomond Drive
Bethesda, Maryland 20817
Attention: Andrew Darneille

12.    This Agreement may be executed in two (2) or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Agreement.

13.    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

14.    If any provision of this Agreement shall be held or deemed to be invalid, inoperative or unenforceable, this Agreement shall be reformed and construed as if such invalid, inoperative or unenforceable provision had never been contained herein and such provision reformed so that it would be valid, operative and enforceable to the maximum extent permitted.

15.    This Agreement shall be binding upon the successors and assigns of Landlord and Lender and shall inure to the benefit of each parties' respective successors and assigns.

**IN WITNESS WHEREOF,** the parties hereto have executed this Subordination of Lien Agreement under seal as of the day and year first hereinabove written.

**[SIGNATURES FOLLOW]**

4

**LENDER:**

Capital Bank, National Association

By: _____
     Name: CHRIS MULLINGS
     Title: SENIOR VICE PRESIDENT

**TENANT:**

Smokecraft Clarendon, LLC
a Virginia limited liability company

By: _____
     Andrew Darneille
     Member

**LANDLORD:**

KBSIII 3003 Washington, LLC
a Delaware limited liability company

By:    KBS Capital Advisors, LLC,
       a Delaware limited liability company, its authorized agent

       By: _____
           Stephen J. Close
           Senior Vice President

**LENDER:**

Capital Bank, National Association

By: _____

       Name: _____

       Title: _____

**TENANT:**

Smokecraft Clarendon, LLC
a Virginia limited liability company

By: _____

       Andrew Darneille
       Member

**LANDLORD:**

KBSIII 3003 Washington, LLC
a Delaware limited liability company

By:     KBS Capital Advisors, LLC,
       a Delaware limited liability company, its authorized agent

       By: _____

           Stephen J. Close
           Senior Vice President

5

**LENDER:**

Capital Bank, National Association

By:_____
        Name:_____
        Title:_____

**TENANT:**

Smokecraft Clarendon, LLC
a Virginia limited liability company

By:_____
        Andrew Darneille
        Member

**LANDLORD:**

KBSIII 3003 Washington, LLC
a Delaware limited liability company

By:      KBS Capital Advisors, LLC,
        a Delaware limited liability company, its authorized agent

      By:_____
        Stephen J. Close
        Senior Vice President

5