**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

In re                                                    Case No. 24-13609-MCR

Smokecraft Clarendon, LLC                                Chapter 11

      Debtor.

_____/

**FIRST AND FINAL APPLICATION OF THE**
**VERSTANDIG LAW FIRM, LLC D/B/A THE BELMONT**
<u>**FIRM FOR PAYMENT OF LEGAL FEES AND REIMBURSEMENT OF EXPENSES**</u>

      Comes now The VerStandig Law Firm, LLC d/b/a The Belmont Firm ("VLF"), by and through undersigned counsel, Smokecraft Clarendon, LLC ("Smokecraft" or the "Debtor"), by and through undersigned counsel, pursuant to Sections 327 and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2016, Local Rule 2016-1, and Appendix D to the Local Rules, and moves for approval of (i) $48,260.00 in legal fees; and (ii) $1,010.66 in reimbursable expenses; for a total approval of (iii) $49,270.66; *to be discounted* by (iv) $23,198.93 upon approval; for a total allowed claim of (v) $26,071.73, to be paid under the plan of reorganization (the "Plan," as found at DE #130), as confirmed and modified by this Honorable Court's confirmation order (the "Confirmation Order," as found at DE #143), and in support thereof VLF states as follows:

**I.     Introduction**

      In late April 2024, Smokecraft petitioned for chapter 11 relief and, on every calendar day since then—excepting certain holidays—the Debtor's restaurant has remained open for business. Every single non-insider payroll obligation has been met on time. Every single rent payment has been made. More meals than VLF wishes to try to calculate have been served and catered. And a

1

vibrant barbecue establishment in the heart of the Clarendon community has successfully reorganized through the provisions of Subchapter V.

The Debtor deserves enormous credit for these accomplishments; operating a restaurant has never been an easy or financially-simplistic task and doing so through the throes of a pandemic is assuredly all the harder. Too few dining establishments that enter chapter 11 exit with a non-liquidating confirmed plan in tow; it is, no doubt, the extraordinary nature of Smokecraft—and the exemplary work of the company's principal—that have chiefly afforded this establishment the fresh start at the heart of the bankruptcy system.

Getting from a petition for relief, through a confirmed plan of reorganization, did take some legal work, though. And, as is assuredly familiar to this Honorable Court, Smokecraft's case certainly had a few moments of contention along the way, punctuated by contested hearings and the admirably zealous efforts of a secured creditor working to ensure its best interests were well addressed. Title 11 of the United States Code (the "Bankruptcy Code"), alongside the Federal Rules of Bankruptcy Procedure and the Local Rules of this Honorable Court, permit those performing such legal work to seek compensation for the correlative labors and reimbursement for expenses incurred along the way. VLF accordingly does so now.

As noted in the prefatory paragraph of this application, VLF is seeking approval of $48,260.00 in legal fees and $1,010.66 in reimbursable expenses, for a total approval of $49,270.66, but is asking that a discount of $23,198.93 be applied upon the granting of approval, so the actual administrative expense claim of VLF will be reduced to $26,071.73. Transparently, the discount being afforded was contemplated prior to the Plan's filing, is addressed in the Plan itself, *see* Plan, DE #130, at § 3.02, n. 8, and is necessary to ensure the Debtor be able to perform under the strictures of the Plan and the Confirmation Order.

2

## II.      Recitations Pursuant to Federal and Local Rules

Rule 2016(a)(1)(A) / Appendix D, § A(1-5): This application seeks allowance of $48,260.00 in legal fees, for 99.7 billable hours of attorney time, and reimbursement of $1,010.66 in expenses. The blended average billable rate for legal services is $484.05, with the average reduced to $261.50 upon application of the discount addressed above. A discussion of services rendered is included *infra* as part of the lodestar analysis and time records, memorializing the nature of all such services, are appended hereto as Exhibit A.

Rule 2016(a)(1)(B): No interim compensation was sought in this case. However, $5,738.00 was paid to VLF for pre-petition services and reimbursement of pre-petition expenses (including prepayment of the filing fee in this case). *See* Filing Notes, DE #1, at p. 6, ¶ 5.

Rule 2016(a)(1)(C): VLF is holding a pre-petition retainer of $9,262.00, paid by the Debtor, that will be paid over to the Subchapter V trustee for payment of her allowed fees and expenses in this case (upon the granting of such allowance). Any allowed fees and costs payable to VLF will take the form of an allowed administrative claim against the Debtor's bankruptcy estate.

Rule 2016(a)(1)(D): No previous compensation has been shared.

Rule 2016(a)(1)(E-F): There does not exist any agreement or understanding between VLF and any other entity for sharing compensation for services rendered in connection with this case.

Appendix D, § A(6-7): The necessity of the services rendered, alongside matters relevant to the determination of the reasonableness of the time expended, are discussed in greater detail *infra* as part of the lodestar analysis.

Appendix D, § A(8): By signing this application, undersigned counsel avers that it is his good faith belief the compensation requested is reasonable based upon the customary

compensation and reimbursement of expenses charged by VLF and comparably skilled professionals in non-bankruptcy matters.

Appendix D, § A: An order approving the employment of VLF was entered on June 27, 2024. DE #37.

### III.    Categorization of Time Entries Since First Interim Application

In accord with guidelines promulgated by the United States Trustee, VLF recorded all time in this matter in project categories. The time recorded—and compensation requested—for each such project category, is as follows:

a.  Case Administration – 46.5 Hours – $23.017.50 in fees; $124.12 in reimbursements

b.  Plan and Disclosure Statement – 45.2 Hours – $21,282.50 in fees; $886.54 in reimbursements

c.  Employment Applications – 1.9 Hours – $940.50 in fees

d.  Claims Administration and Objections – 6.1 Hours – $3,109.50 in fees[1]

### IV.    *Johnson* Factors

Familiarly, the Fifth Circuit Court of Appeals established the factors by which an attorney's request for compensation ought to be assessed, in the matter of *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), with the Fourth Circuit subsequently adopting these factors. *See Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978). VLF accordingly addresses each criterion herein:

---

[1] In light of the manner in which claims allowance largely overlapped with plan confirmation, there is a marked overlap between these two categories, with most cross-applicable time being categorized as time spent on the Debtor's plan. No time is double-counted, but time could certainly be subjectively reapportioned between these two categories.

4

### a. The time and labor required

As noted *supra*, VLF devoted 99.7 billable attorney hours of time to this case. Not surprisingly, such is actually an understatement of time: attorney discretion is regularly exercised to not bill for short phone calls or e-mails, just as discretion is regularly applied to not always invoice for those miscellaneous spots of personal time when a case-centric observation pops into one's head. The whole of these 99.7 hours come in the form of legal work; while VLF's engagement agreement allows for the billing of paralegal time, the firm rarely actually does so and has not done so in this case. Equally, while two attorneys did work on this case, the efforts of one attorney were limited to a discreet research project, thereby avoiding any risk of overlapping or duplicative efforts.

Much of the time spent on this case was applied to "ordinary" facets of a small business chapter 11 case. First day motions were docketed and argued; cash collateral agreements were negotiated and documented; an initial debtor interview was attended, as was a meeting of creditors; a status conference was held, with a report being filed in advance of the same; and a plan of reorganization was prepared, amended, and ultimately confirmed.

This case did, too, have certain more unique eccentricities. Certain creditors refused to do business with the Debtor almost as soon as the case was filed. Issues surrounding the cash collateral treatment of funds held in a bank account, at an institution other than that of the secured creditor, without an account control agreement in place, had to be assessed under the UCC. A dispute over collateral valuation invited dueling expert reports. A dispute over the application of the facts of this case to Virginia's unique fixtures law invited a contested hearing. At least one slightly unusual asset, in the form of a potential professional liability claim against a third party law firm, had to

be novelly treated in the Debtor's plan. And questions concerning potential Chapter 5 claims were raised by various parties in interest.

### b. The novelty and difficulty of the questions

This case actually presented a couple of somewhat-novel questions, albeit with most bankruptcy-centric issues being quite ordinary in nature. Issues related to the somewhat unorthodox nature of the Commonwealth of Virginia's fixture laws ultimately proved critical to determining the value of a secured claim in this case. And while this was a Subchapter V case, and accordingly a relatively straightforward proceeding in many regards, the matter did sometimes border on the more complex side of small business cases, with appraisal-centric issues coming into play, a convenience class being contemplated in one plan iteration, and some UCC-centric eccentricities appearing in the prism of cash collateral negotiations.

VLF certainly does not posit this to have been a notably novel bankruptcy case, replete with difficult questions. But it does appear fair to recognize this also was not a cookie cutter case that could be conducted solely with the use of forms and the minimalistic application of professional strategy and advocacy. There were, quite genuinely, moments in time when the Debtor had to confront contentions that, if accepted, would have likely doomed reorganizational hopes; no reported opinions may have flowed from this case, but such does not mean there were not instances demanding legal sophistication.

### c. The skill requisite to perform the legal service properly

This is an awkward factor, inasmuch as the consideration turns on the *Johnson* Court's holding that "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. It stands to reason rather few

attorneys will self-assess themselves in an objective manner, let alone self-assess negatively, and such may well be why this criterion is expressly dependent upon judicial observation.

Still, undersigned counsel believes he presented clean work product in this case, was appropriately prepared for hearings, and proved sufficiently capable in handling matters before this Honorable Court. There exists no delusion that another attorney would not have been able to realize the same results, though there also exists a cautious optimism that skill acquired through experience and education did directly inform the ability of Smokecraft to successfully reorganize.

### d.  The preclusion of other employment by the attorney due to acceptance of the case

VLF does not assert this case required the firm to turn away any other legal work.

### e.  The customary fee

VLF's principal charged an hourly rate of $495.00 for this case, while Christianna Cathcart, an associate at the firm, charged an hourly rate of $200.00 for a single, discreet research task. These figures are, anecdotally, in line with the prevailing normative range of fees charged by chapter 11 counsel in the Washington, DC metropolitan area, and are consistent with what VLF charged other debtor-side clients in the same marketplace at the time of this case's commencement.

The firm primarily operates in the District of Columbia and the District of North Dakota, normatively charging between $500 and $600 per hour to clients in the former market and $400 per hour to clients in the latter market. At the time this case was commenced, $495 per hour was the firm's standard partner rate for District of Columbia cases and was applied to this case given the geographic proximity to the District of Columbia and the almost-complete overlap of the Greenbelt and Washington, DC bankruptcy bars.

These rates are—and always have been—market competitive in nature. Certain attorneys charge more and certain attorneys charge less, but it is respectfully submitted that $495 per hour

7

for partner time, and $200 per hour for associate time, are appropriate rates for this variety of work in the Beltway region.

### f.   Whether the fee is fixed or contingent

The fees charged in this case are uniformly based on hourly work, with all time recorded in tenth-of-an-hour increments.

### g.   Time limitations imposed by the client or the circumstances

VLF does not assert this case invited any unusual temporal limitations.

### h.   The amount involved and the results obtained

The Debtor entered chapter 11 with $1,379,956.48 in debts. *See* Summary of Assets and Liabilities for Non-Individuals, DE #1, at p. 13. The Plan calls for $190,000.00 in payments to be made over a five year timespan. *See* Plan Projections, DE #130-3, at p. 2. These are savings that will ultimately prove vital to allowing Smokecraft to continue as a vibrant, beloved local restaurant. And, whether measured by total debt, secured debt, plan payments, or any other logical metric, the fees being sought herein represent an appropriate fraction of the subject figure.

### i.   The experience, reputation, and ability of the attorneys

Two attorneys worked on this case: Maurice VerStandig ("Mr. VerStandig") and Christianna Cathcart ("Ms. Cathcart").

Mr. VerStandig graduated from the University of Miami School of Law, *cum laude*, in 2009 and, following a one year clerkship, has been practicing law for 15 years. The overwhelming majority of his practice is devoted to chapter 11 insolvency cases. As noted above, his work is largely split between the District of Columbia and the District of North Dakota, though he also regularly handles bankruptcy cases in this Honorable Court and the United States Bankruptcy Court for the Eastern District of Virginia; on rarer occasions, has appeared in the Southern District

of Florida, the District of Nevada, the Central District of California, and the Southern District of New York. He has been a member of the local rules committee, and standing bench/bar committee, for the United States Bankruptcy Court for the District of Columbia since 2020; he has served as an associate editor of the American Bankruptcy Institute Journal since 2021; and he was a member of the American Bankruptcy Institute's "40 Under 40" class of 2024. Mr. VerStandig regularly publishes articles on bankruptcy-centric topics and frequently speaks at regional and local bar conferences on emerging issues in chapter 11.

Ms. Cathcart is a newer attorney, having joined VLF in 2024 after graduating from the University of North Dakota School of Law. Her practice is almost exclusively devoted to the management of bankruptcy cases, being comprised of a blend of consumer and commercial matters. She has argued in the United States Bankruptcy Court for the District of Columbia on multiple occasions, examined witnesses in both state and federal court, and advised debtors in chapter 7, chapter 11 and chapter 13 cases. While no doubt a more recent member of the bar, Ms. Cathcart is an active member of the International Women's Insolvency & Restructuring Confederation and is currently preparing to handle her first chapter 11 confirmation hearing as a first chair attorney.

### j.   The "undesirability" of the case

VLF does not assert this to have been an undesirable case.

### k.   The nature and length of the professional relationship with the client

As is common in the realm of debtor-side chapter 11 work, VLF did not have any relationship with the Debtor before being approached about a potential bankruptcy filing.

### l.   Awards in similar cases

Both the fees for which approval is sought, and the discounted fees for which an administrative claim is sought, are—anecdotally—well in line with those regularly petitioned for, and awarded, in other Subchapter V cases in this Honorable Court and neighboring courts.

## V.     Travel Time and Expenses

Per VLF's agreement with the Debtor in this case (which mirrors, topically, VLF's standard form of agreement), no charge has been applied for travel time, and no reimbursement is sought for travel expenses. While VLF's attorneys both reside outside the Washington, DC region, the firm is proud to have a vibrant local practice and regards travel as an overhead expenses to be born by the firm and not its clientele.

## VI.    Conclusion

WHEREFORE, The VerStandig Law Firm, LLC d/b/a The Belmont Firm respectfully prays this Honorable Court (i) finally approve and ratify the fees sought herein, in the gross sum of $48,260.00; (ii) finally approve and ratify the expenses for which reimbursement is sought herein, in the gross sum of $1,010.66; (iii) apply a discount of $23,198.93 to those aggregate approved fees and expenses, upon approval; (iv) permit VLF to transfer the whole of the monies being held in its attorney trust account, for this case, to the Subchapter V trustee, for the payment of her fees and expenses (upon approval of those fees and expenses); (v) grant VLF an allowed administrative claim against the Debtor's estate, to be paid in accord with the Plan, in the sum of $26,071.73; and (vi) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Counsel for The VerStandig Law
Firm, LLC*

*[Certificate of Service on Following Page]*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Corinne Donohue Adams    cadams@yvslaw.com, cadams@yvslaw.com;jbeckman@yvslaw.com;pgomez@yvslaw.com;vmichaelides@yvslaw.com;r39990@notify.bestcase.com
- Catherine Keller Hopkin    chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- Courtney L. Morgan    courtney.l.morgan@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- Angela L. Shortall    ashortall@3cubed-as.com, md70@ecfcbis.com
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on the 11th day of August, 2025, a copy of the notice affixed hereto (but not this application or any other exhibit affixed hereto) is being sent via First Class Mail, postage prepaid,  to all parties on the mailing matrix attached hereto as Exhibit B, *except* that no copy is being mailed to undersigned counsel.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.